WILLIAM L. SLOCUM, administrator, *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Worcester. December 14, 1922. — June 7, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Insurance,* Fraudulent beneficiary. *Homicide. Executor and Administrator. Distribution and Descent.*

Where a policy of endowment insurance provides that, " In case of such . . . death of the insured [prior to the expiration of the endowment period] the company may pay the amount due under this Policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial," and the insured's husband, who was named as beneficiary under the policy, feloniously caused the death of the insured, the public policy which prevents recovery by the beneficiary is no defence to an action on the policy by the administrator of the insured although the net proceeds

of the administration of the estate of the deceased under the strict wording of the statute of distribution would be payable to the murderer.

The right of the administrator to maintain an action in the circumstances above described is not affected by G. L. c. 175, § 125.

The public policy, which would prevent recovery by the person named as the beneficiary under the policy in the circumstances above described, also would preclude him from sharing in the proceeds of the estate of the insured under the statute of distribution.

CONTRACT by an administrator upon a policy of insurance issued upon the life of the plaintiff's intestate and payable to the husband of the insured, the plaintiff alleging that the husband was barred from recovery by reason of the fact that he had murdered the insured. Writ dated April 14, 1921.

In the Superior Court, the action was heard on agreed facts by *O'Connell*, J., without a jury. It appeared that the insured died without issue leaving an estate of less than $5,000 and that the net proceeds of the administration of the estate under the strict wording of the statute of distribution would be payable to the husband. Other material facts are described in the opinion. The defendant asked the judge for rulings as follows:

" Upon all the evidence the court is asked to find for the defendant.

" Upon the law and the evidence the court is asked to find for the defendant."

The judge found for the plaintiff in the sum of $190.99; and the defendant alleged exceptions.

The case was submitted on briefs.

*J. M. Thayer, A. H. Bullock & J. J. Hurley*, for the defendant.

*C. R. Johnson & C. W. Johnson*, for the plaintiff.

DECOURCY, J. This is an action of contract on a policy of life insurance issued by the defendant to the plaintiff's intestate, Lillian E. Miller. On November 26, 1920, she was shot and killed by her husband, Charles Miller, who at that time was the beneficiary named in the policy. The only question raised by the defendant is whether said administrator is entitled to the proceeds of the policy, the insured having died leaving no issue.

Admittedly Charles Miller would be debarred from acquiring the proceeds if he should bring an action in his own name under G. L. c. 175, § 125. It would be contrary to public policy to permit a beneficiary who has feloniously taken the life of the insured to recover on the policy. *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591. *Metropolitan Life Ins. Co.* v. *Shane,* 98 Ark. 132. *Knights & Ladies of Honor* v. *Menkhausen,* 209 Ill. 277. *Schmidt* v. *Northern Life Association,* 112 Iowa, 41. *Anderson* v. *Parker,* 152 N. C. 1. *Filmore* v. *Metropolitan Life. Ins. Co.* 82 Ohio St. 208. *Equitable Life Assurance Society of the United States* v. *Weightman,* 61 Okla. 106. *Murchison* v. *Murchison,* 203 S. W. Rep. 423. *Johnston* v. *Metropolitan Life Ins. Co.* 85 W. Va. 70. *Cleaver* v. *Mutual Reserve Fund Life Association,* [1892] 1 Q. B. 147. 3 L. R. A. (N. S.) 727, note.

In determining whether any one other than the beneficiary can recover on a policy, the effect of G. L. c. 175, § 125, must be considered. This statute, so far as here applicable provides: " If a policy of insurance is effected by any person on his own life . . . in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof . . . shall be entitled to its proceeds against the creditors and representatives of the person effecting the same; and the person to whom a policy of life or endowment insurance, issued subsequent to April eleventh, eighteen hundred and ninety-four, is made payable may maintain an action thereon in his own name." The provision therein entitling the beneficiary to the proceeds of the ·policy as against creditors of the insured has been embodied in our insurance law since St. 1844, c. 82, § 2. The beneficiary could not maintain an action on the policy in his own name, however, until St. 1894, c. 225. *Wright* v. *Vermont Life Ins. Co.* 164 Mass. 302. That the 1894 statute, giving to the beneficiary a right of direct action against the insurer on the policy of insurance, changed only the procedural and not the substantial rights of the parties, and that the right of the executor or administrator of the insured to maintain such an action is not taken away by the statute,

seem settled by *Brown* v. *Greenfield Life Association*, 172 Mass. 498. See also *Wright* v. *Vermont Life Ins. Co. supra; Dean* v. *American Legion of Honor*, 156 Mass. 435, 439; *Lorando* v. *Gethro*, 228 Mass. 181, 187. In considering the administrator's right apart from said statute, we lay one side the cases arising out of membership in fraternal or mutual benefit associations. These rest on the contract and by-laws of the society, and the nature of a member's right therein, to determine who shall take in the place of the debarred beneficiary. See *Schmidt* v. *Northern Life Association, supra; Knights & Ladies of Honor* v. *Menkhausen, supra; Sharpless* v. *Ancient Order of United Workmen*, 135 Minn. 35. Where the policy has been issued by a private company the weight of authority is in favor of allowing the administrator of the insurer to recover. *Metropolitan Life Ins. Co.* v. *Shane, supra. Anderson* v. *Parker, supra. Equitable Life Assurance Society of the United States* v. *Weightman, supra. Murchison* v. *Murchison, supra.* 14 Ann. Cas. 99, note. 7 A. L. R. 828, note. As was said by Lord Esher, M. R., in *Cleaver* v. *Mutual Reserve Fund Life Association, supra*, at pages 152, 153: " That the person who commits murder, or any person claiming under him or her, should be allowed to benefit by his or her criminal act, would no doubt be contrary to public policy. But this doctrine ought not to be stretched beyond what is necessary for the protection of the public; and, if the matter can be dealt with so that such person should not be benefited, I do not see any reason why the defendants in such a case should be allowed to say, though they might have received premiums perhaps for thirty years and still retained the same, that public policy forbade their paying the sum of money which they had contracted to pay. It seems to me that this question of public policy does not arise as between the executors and the defendants. The question arises at a later stage. When the money is in the hands of the executors, the question arises how, under the circumstances, they must deal with it." The right of the administrator is ordinarily based on the creation of a resulting trust in favor of the estate of the insured. Joyce on Ins. (2d ed.) § 833. *Johnston* v.

*Metropolitan Life Ins. Co.* 85 W. Va. 70, 73, and cases cited. See *Bancroft* v. *Russell*, 157 Mass. 47; *Shea* v. *Massachusetts Benefit Association*, 160 Mass. 289.

Since the argument of this case the policy has been filed with us, and it has been agreed that it may become part of the record. It is an endowment policy, dated July 22, 1912, payable to the insured, whose name then was Lillian E. White, at the end of twenty years. The company further agreed therein "Subject to the conditions aforesaid, if the insured shall die prior to the date of the maturity of the Endowment, to pay upon receipt of proofs of the death of the insured made in the manner, to the extent and upon the blanks required herein, and upon surrender of this Policy and all Receipt Books, the amount stipulated in said schedule. Provided, however, that no obligation is assumed by the Company prior to the date hereof, nor unless on said date the insured is alive and in sound health. In case of such prior death of the insured the Company may pay the amount due under this Policy to either the beneficiary named below or to the executor or administrator, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this Policy have been satisfied." The original beneficiary named was "Henry White — Husband." One of the "privileges and concessions to policy-holders" was the following: "Change of Beneficiary. Subject to the approval of the Company, the insured, at any time during the continuance of this Policy . . . may change the beneficiary or beneficiaries, by written notice to the Company at its Home Office, accompanied by this Policy, such change to take effect on the endorsement of the same on the Policy by the Company." Under date of August 16, 1919, the beneficiary was changed to Charles Miller, husband of the insured. This and the change of her name to Lillian Miller, by reason of her marriage since the policy was issued, were

approved by the company.  There was no provision absolving the insurance company from liability because of the death of the insured at the hands of the beneficiary.

In a policy which permits the insured to change the beneficiary, the latter has no vested interest in the money to be paid, but only an expectancy.  See *Davis* v. *Royal Arcanum*, 195 Mass. 402, 408.  It is clear from the terms of the present policy that Miller had no vested right in the proceeds as against the company.  And as against him, the insured retained an interest in the policy, and a right to determine who should be entitled to the proceeds as beneficiary in the event of her death prior to the maturity of the endowment.  As Miller by his conduct has raised a personal bar at law to his recovery, and the company has not availed itself of the authority to pay the proceeds to any other of the persons specified in the contract, the court rightly refused to make the rulings requested by the defendant, and found for the plaintiff, the administrator of the estate of the insured.  While the question is not now directly before us, as to what disposition the administrator must make of the money, amounting to $190.99, it may be added that if any of it should remain after the payment of the debts of the insured and charges of administration, it cannot go to Miller, who feloniously took her life.  The same principle of public policy which precludes him from claiming directly under the insurance contract, equally precludes him from claiming under the statute of descent and distribution.  *Riggs* v. *Palmer*, 115 N. Y. 506.  *Cleaver* v. *Mutual Reserve Fund Life Association*, [1892] 1 Q. B. 147. *In re Crippen*, [1911] P. 108, 113.  *Hall* v. *Knight*, [1914] P. 1. *Perry* v. *Strawbridge*, 209 Mo. 621.  *Box* v. *Lanier*, 112 Tenn. 393.  See *Hatch* v. *Mutual Life Ins. Co.* 120 Mass. 550; *Davis* v. *Royal Arcanum, supra.*

*Exceptions overruled.*