(No. 20289.—

The Illinois Bankers Life Association *vs.* James T. Collins, Admr., Appellee.—(A. C. Helms *et al.* Appellants.)

*Opinion filed October 25, 1930—Rehearing denied Dec. 10, 1930.*

H. E. Skinner, and D. L. Duty, for appellants.

White & Quindry, for appellee.

Mr. Justice Heard delivered the opinion of the court:

The Illinois Bankers Life Association on June 21, 1921, issued a policy of insurance in which it agreed to pay to Thomas C. Collins, husband of Maggie E. Collins, as beneficiary, the sum of $1000 upon her death. On February 22, 1927, Mrs. Collins, the insured, was murdered by the husband, Thomas C. Collins, the beneficiary, who shortly thereafter killed himself. They both died intestate and left no children or descendants of children. On July 1, 1927, A. C. Helms, Gus Helms, Mary Watson, Wayne Helms and Lorraine Helms, as collateral heirs-at-law and next of kin of

Mrs. Collins, filed suit against the Illinois Bankers Life Association in the circuit court of Williamson county to recover the insurance. James T. Collins was appointed administrator of the estate of Thomas C. Collins, deceased, and on August 4, 1927, he, as such administrator, filed suit in the same court to recover the same insurance. He claimed the fund for his intestate, asserting that Mrs. Collins died prior to her husband, and that the husband, under the law of descent, was the sole distributee of the fund, while the appellants claimed the fund as the only surviving members of the class eligible, under the laws of this State, to take the fund. The Illinois Bankers Life Association filed its bill of interpleader· in the circuit court of Williamson county, making the several claimants parties defendant and tendering into court $1000, to be distributed as the court might direct. The cause was referred to the master in chancery, who reported recommending a decree in favor of the appellants, and a decree was entered in accordance therewith, ordering that the fund be paid to them. From this decree James T. Collins, administrator, appealed to the Appellate Court for the Fourth District, which court reversed the decree of the circuit court and remanded the cause, with directions to enter a decree directing that the fund be paid to the heirs of Thomas C. Collins. From this judgment of the Appellate Court the appellants applied for and were granted a certificate of importance, and they have appealed to this court.

The sole question involved here is to whom the fund should be paid. By the terms of the policy of insurance the insured had the right to change the beneficiary at any time she desired, and the beneficiary, therefore, had no vested interest therein during her lifetime. The policy was not made payable to the insured nor to her legal representatives, and so the fund payable was not an asset of her estate, and the laws of descent with reference to the distribution of her personal property are not here in question. Thomas C.

Collins was named in the policy as beneficiary, and upon his wife's death he became entitled to be paid the fund by the insurance company directly, without the intervention of her legal representatives, unless such a construction of the policy would be contrary to the public policy of this State. The public policy of a State is to be found embodied in its constitution and its statutes, and, when these are silent on the subject, in the decisions of its courts. (*People* v. *City of Chicago*, 321 Ill. 466; *Harding* v. *American Glucose Co.* 182 id. 551; *People* v. *Shedd*, 241 id. 155; *Zeigler* v. *Illinois Trust and Savings Bank*, 245 id. 180; *Merchants Trust Co.* v. *City of Chicago*, 264 id. 76.) Limiting their actions to questions left open by the constitution and the statutes, courts may apply the principles of the common law to the requirements of the social, moral and material conditions of the people of the State and declare what rule of public policy seems best adapted to promote the peace, good order and general welfare of the community, and for that reason the decisions of its courts are to be investigated in determining the public policy of the State. (*Collins* v. *Metropolitan Life Ins. Co.* 232 Ill. 37.) The constitution and the statutes of this State are silent on the question of public policy here involved, but this court in *Knights of Honor* v. *Menkhausen*, 209 Ill. 277, prior to the issuance of the policy here in question, had held that it was contrary to the public policy of this State to so construe a contract of life insurance that a murderer might be the beneficiary under such policy on the life of his victim either as beneficiary or as heir; that in such case the situation, so far as his rights were concerned, was the same as though after the issuance of the policy he had been divorced from his wife and she had thereafter died without having any alteration made in the certificate, and that the fund was to be paid neither to the murderer nor to the estate of the deceased but to the next of kin of the deceased other than the murderer. To the same effect are *Johnson* v. *Metropolitan Life Ins. Co.* 24 Ga. 545, 100 S. E.

865; *Slokum* v. *Metropolitan Life Ins. Co.* 245 Mass. 565, 139 N. E. 816; *Filmore* v. *Metropolitan Life Ins. Co.* 82 Ohio, 208, 92 N. E. 26; *Schmitt* v. *Northern Life Ass'n,* 51 L. R. A. 141; *Equitable Life Assurance Society* v. *Weightman,* 61 Okla. 106; *Riggs* v. *Palmer,* 115 N. Y. 506. In the *Schmitt case* it was said: "Indeed, the unbroken voice of authority is to the effect that a beneficiary in an insurance policy who murders the insured forfeits his rights thereunder." In *New York Mutual Life Ins. Co.* v. *Armstrong,* 29 U. S. (L. ed.) 1000, the Supreme Court of the United States said upon this subject: "It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon the building that he had willfully fired." The contract of insurance between an insurance company and the insured is contained in the policy, taken in connection with the constitution and by-laws of the organization and the laws of the State under which it is formed, as evidenced by the statutes of the State and the prior decisions of its courts, and such laws enter into all its contracts. *Wallace* v. *Madden,* 168 Ill. 356; *Alexander* v. *Parker,* 144 id. 355.

A basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement. (*Armour Packing Co.* v. *United States,* 14 L. R. A. (n. s.) 400; *United States* v. *Quincy,* 18 U. S. (L. ed.) 403; *Rees* v. *Watertown,* 22 id. 74; *Edwards* v. *Kearzey,* 24 id. 793; *Siebert* v. *United States,* 30 id. 1161; *Farmers Bank* v. *Federal Reserve Bank,* 67 id. 1157; *Reutenik* v. *Gibson Packing Co.* 132 Wash. 108; *In re Fidelity Bank,* 35 Ida. 797; *Cincinnati* v. *Public Utility Co.*

98 Ohio, 320, 121 N. E. 688.) Contracts are presumed to have been entered into in the light of existing principles of law, (*Black* v. *Negros-Phillipine Lumber Co.* 32 Wyo. 248,) and the existing law is presumed to be a part of every contract, (*Farley* v. *Board of Education*, 62 Okla. 181,) and contracts should be so understood and construed unless otherwise clearly indicated by the terms of the agreement. *Wilson* v. *Rousseau*, 11 U. S. (L. ed.) 1141.

This case differs from *Wall* v. *Pfanschmidt*, 265 Ill. 180, which case involved solely the construction of the Statute of Descent as to real estate, and it was there held that the Statute of Descent in plain and unambiguous terms vests in the heir such estate as he is entitled to, immediately upon the death of the intestate from whom he inherits, and that where the terms of a statute are plain and unambiguous there is no room for construction, and the court cannot read into it exceptions or limitations which depart from its plain meaning, while the instant case involves the construction of a contract into which entered, as an integral part, the law and public policy of the State as evidenced by the decisions of this court. This distinction is recognized in the *Wall case*, where it was said: "Counsel argue that even though the grounds of public policy would not justify the construction of the Statute of Descent as contended for by them, public policy will forbid such a construction or enforcement of the statute as will encourage crime or give a reward for its performance. This doctrine was practically invoked in *Knights of Honor* v. *Menkhausen, supra*, but there it was as to the construction of a contract and not of a statute."

The decree of the circuit court was in accordance with the views here expressed, and it will be affirmed and the judgment of the Appellate Court reversed.

*Circuit court affirmed, Appellate Court reversed.*