## WINTERS NATL BANK & TRUST CO
## v SHIELDS et

Probate Court of Montgomery Co

Decided May 17, 1939

Matthew W. Shields, Jr., of Dayton, for executor.

### OPINION

By WISEMAN, J.

This is an action for a declaratory judgment. The decedent, Pleasant S. Hill, died on the 11th day of January, 1938, as the result of a gun shot wound intentionally and feloniously inflicted upon him by his wife, Etta J. G. Hill, who was indicted for murder in the second degree. Before she was brought to trial, at a sanity hearing she was found to be then insane and was committed to the Lima State Hospital, where she is now confined. The indictment for murder has not been quashed, and her trial is made contingent upon her restoration to sanity. A guardian of her estate has been appointed in this court.

The decedent left his widow, Etta J. G. Hill, and four children: three adult children by a former wife, Jennie Hill, who died in 1922, and one minor child, Arthur Hill, under the age of eighteen years, by his widow, Etta.

The decedent left a will which has been duly probated, in which he made no provisions whatever for his widow, Etta, but directed that his estate, after the payment of the debts, be divided among his four children; the three children by his first wife are to receive their shares at once, but the share of the minor child, Arthur, is bequeathed and devised in trust to the Winters National Bank and Trust Company for his benefit until he attains the age of twenty-

one years, at which time said trust is to terminate.

The inventory and appraisement shows that at the time of his death the decedent had in his possession $808.67 in money, and was the owner of an undivided one-half interest in three and eight-tenths acres of land situated in Greene county, Ohio, which was appraised at $500. The schedule of claims which has been filed and approved by the court, shows a total indebtedness of $1616.07.

In a former hearing, this court found that the life of the decedent had been insured and that in the policy the widow was named as beneficiary. This court followed the principle of law laid down in the case of **Filmore v Insurance Co., 82 Oh St 208** (1910), and held that the widow, by feloniously taking the life of her husband, had forfeited her right to the proceeds of said policy. Furthermore, this court held that the insurer was not relieved of liability on the ground that the beneficiary murdered the insured, but that, since there was no contingent beneficiary designated in the policy, the insurer held the insurance proceeds in trust for the benefit of the estate of the insured, and ordered the proceeds paid to the executor of said estate. **National Benefit Life Ins. Co. v Davis, 38 Oh Ap 454** (1929); **Polish National Alliance v Crowley, 38 Oh Ap 327** (1930); Schmidt v Northern Life Assn., 112 Iowa 41, 83 N. W. 800, 51 L.R.A. 141 (1900); Smith v Todd, 70 A.L.R. 1529, 155 S. C. 323; Ins. Co. v Butts, 16 S. W. (2nd) (Ark.) 184 (1929); Joyce on Ins., (2d Ed.) Vol. 2, p. 1827; Cooley's Briefs on Ins. (2d Ed.) Vol. 6, p. 5229. A collection of authorities supporting this principle of law is found in 91 A.L.R. pp. 1486, 1488.

The assets of decedent's estate, including the insurance proceeds in the amount of $4342.12, aggregated $5,650.79. No personal property other than cash being available, the appraisers, pursuant to the provisions of §10509-54, GC, set off to the widow $1,130.15 in lieu of property not deemed assets of said estate, and, under the provisions of §10,-509-74, allowed to the widow and minor child the sum of $350 for their year's support. An election not to take under the will was duly filed for the widow, in compliance with the provisions of §10504-63 and §10504-64, GC.

The Winters National Bank & Trust Company as executor of the will of Pleasant S. Hill, deceased, asks the court to declare the rights of all interested parties and particularly the right of the guardian of the widow to receive the amount of money set off to her as exempt under §10509-54, and the amount of money allowed to her as a year's support under §10509-74, as well as the right of her guardian to receive her intestate share in said estate, which in this case would be one-third of the net estate. The executor states that he is in doubt as to the right of the widow to take any part of the assets of said estate in satisfaction of her statutory allowances and intestate share, in view of the provisions of §10503-17, GC, and, if she is entitled to take said statutory allowances and intestate share, whether she should participate in the proceeds of the insurance policy or whether her interest in her husband's estate should be limited to the assets exclusive of the proceeds of the insurance policy; and, also, whether the amount found due her, if any, should be paid to her guardian or impounded pending a final disposition of the criminal charge.

The court must determine what, if any, interest the wife takes in the estate of her husband when the facts show she has feloniously taken his life. At common law, three distinct views were taken by the courts of the several states. First, that a murderer may acquire nothing at all from his victim. The leading case supporting this view is Riggs v Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L.R.A. 340 (1889). Second, that title passes to a murderer but because of the unlawful means of securing it he holds it as a constructive trustee for the benefit of the heirs of the victim. The leading case supporting this view is Bryant v Bryant, 193 N. C. 371, 137 S. E. 188, 51 A.L.R. 1100 (1927). Third, the weight of authority and the general

rule is, that the murderer is permitted to acquire the property of his victim and to retain it in spite of his crime. The courts which follow this rule hold that under the statutes of descent and distribution, a murderer will inherit and no exception can be written into the laws by judicial construction. The courts in Ohio have followed the general rule. The leading case in this state is Deem v Millikin, 6 C. C. 357, affirmed by the Supreme Court without report, 53 Oh St 669 (1895). In 1931 the Court of Appeals for Franklin County, in the case of Demos v Freemas, 43 Oh Ap 426, approved this principle of law. We conclude, therefore, that the rule at common law in Ohio does not deprive the widow of Pleasant S Hill of her interest in his estate under the statutes of descent and distribution, even though she did feloniously take his life.

It is contended that by the enactment of §10503-17, GC, the legislature of this state declared a new public policy, and that the courts henceforth should not adhere strictly to the common law rule which prevailed in Ohio, and that the court should now at common law deny a person who has feloniously killed another, the right to inherit from his victim.

Do the provisions of §10503-17 forbid the application of the common law rule to the facts in the instant case? We do not think so. The state legislature in enacting §§10503-17, which is an exception in our statutory law of descent and distribution, declared a new public policy, to-wit: that a murderer **convicted** of murder in the **first or second degree** should not inherit from his victim. It will be observed that this statute, by its express provision, does not operate to deprive a murderer from inheriting unless he is convicted of the crime. In the case at par no conviction has been had. The court can not anticipate a conviction. A conviction may never take place. This court is not the forum in which to try the facts; nothing short of a showing of conviction of murder in the first or second degree by a court of competent jurisdiction, requires the application of the provisions of §10503-17, GC. Demos v Freemas, supra; Burns v Cope, 182 Ind. 289; **Harrison v Hillegas, 28 Abs 404.**

This court holds that it was not the intention of the legislature, in enacting §10503-17, GC, to abrogate or modify the common law rule in Ohio which allows a murderer to inherit from his victim. The effect of the statute is to change the status of the person convicted relative to his right to inherit from his victim only if conviction is shown. Cooke, Admr. v Ins. Co., 30 N. P. N. S. 247 (1932). Therefore, the court holds that since a conviction has not been shown, the widow is entitled to her statutory allowances and her intestate share in the net estate, and is not deprived of her right to take such interest in her deceased husband's estate which the law gives her, notwithstanding she feloniously took his life.

Hence, this court is not required to pass upon the constitutionality of §10503-17 in view of the provisions of **Sec. 12, Art. 1, of the Constitution of Ohio,** which provides that "no conviction shall work corruption of blood, or forfeiture of estate". Also, the court is relieved of deciding whether the statutory allowances of the widow falls within the provisions of §10503-17, GC.

But it is contended that the widow should not be allowed to participate in the proceeds of the insurance policy. Shall the "twenty per centum" set off to the widow, the widow's allowance, as well as her intestate share, be based on all the assets of the estate, including the proceeds of the insurance policy, or only on the assets of the estate exclusive of the insurance proceeds? This court can find no reason to make a distinction between the right of the widow to money set off to her in lieu of property not deemed assets of the estate, her year's allowance, and her intestate share.

Since the court has denied the widow the right to receive the insurance pro-

ceeds as a beneficiary under the policy, can she now participate in such proceeds as widow and heir of her victim? There is a diversity of opinion on this proposition. Some courts hold that the beneficiary can not participate in the insurance proceeds as an heir of the victim. and other courts hold that the beneficiary may do so.

A leading case in which the right is denied, is Johnson v Metropolitan Life Ins. Co. 7 A.L.R. 823 (W. Va.), 100 S. E. 865 (1919). The court on page 826 say:

"It occurs to us upon sound reasoning that, where the beneficiary in a policy of life insurance is denied the right of recovery upon grounds of public policy, a trust results in favor of the estate of the insured, and ordinarily the personal representative of the insured can maintain a suit to recover the fund for the benefit of that estate. * * *

"In this case, however, the defendant insists that a personal representative should not be allowed to recover, for the reason that such recovery would be for the benefit of the murderess. The insured had no children, and his widow, under the Law of Descents and Distributions, is the sole distributee of his personal estate. * * * It further follows that if the personal representative of the insured in this case is permitted to recover this fund, the beneficiary will accomplish by indirection that which she could not do directly. * * *

"Will the courts, then, allow themselves to be used for the purpose of bringing into existence an estate which will, by operation of law, devolve on one who, because of his conduct, is not entitled to it? The administrator has no interest in the subject-matter. It is agreed here that the insured left no debts, and it follows that every dollar of the fund recovered by the administrator in his representative capacity must go to the murderess. The suit is simply in his name for the benefit of the one who feloniously caused the insured's death. * * *

"In some of the cases we have above cited, permitting a recovery by the administrator of the insured where the beneficiary had caused the death, it was suggested that part of the fund might go to the beneficiary under the Law of Descents and Distributions, but that was held not to defeat recovery. That may be true where only part of the fund goes to the guilty party. It may be that the courts would not allow the innocent to be deprived of the property to which they are entitled, for the sole reason that to enforce their rights would also confer a benefit upon a guilty party. However, that question does not arise here, and we express no opinion thereon. We are of opinion, however, that where the guilty party will take the whole of the recovery in case one is allowed, the policy of our law as effectually denies recovery as it would were the suit brought in the name of the guilty party himself."

This case was followed by the same court in 1928, in Wickline v Ins. Co., 145 S. E. 743 W. Va. in which the court held:

"The administrator of the holder of a life insurance policy may not recover on the policy, where the decedent has been murdered by the sole distributee of the estate."

Again in 1933 the same court approved and followed this principle of law in the case of State v Ins. Co., 170 S. E. (W. Va.) 909.

In the case of Slocum v Ins. Co., 245 Mass. 565, 139 N. E. 816, 27 A.L.R. 1517, (1923) it was held that:

"The same principle of public policy which precludes him from claiming directly under the insurance contract equally precludes him from claiming under the statute of descent and distribution."

In the case of Illinois Bankers Life Assn. v Collins, 341 Ill. 548, 173 N. E. 465, (1930), wherein the husband, who was named beneficiary in a life policy on the wife, murdered the wife and then committed suicide, the court held that because the policy was not made payable to the insured nor to her legal rep-

resentative, the insurance proceeds were not regarded as assets of her estate, and the laws of descent with reference to the distribution of personal property were not applicable, and ordered the proceeds distributed directly to the heirs of the insured.

An opposite view is taken in the case of Murchison v Murchison, 203 S. W. 423, (Tex. Civ. App.) (1918), in which the court on page 425 say:

"Assuming the truth of the allegation in plaintiff's petition, to the effect that Marguarite Murchison feloniously killed and murdered R. H. Murchison for the purpose of sooner obtaining the insurance money on his life, did that fact deprive her of the right of the surviving wife to take the proceeds of the policy after his death, as against the father, brothers, and sister of R. H. Murichson, the latter having left no child or children? This question necessitates a consideration of several articles of our statutes on the subject of descent and distribution."

The court then discusses the sections of descent and distribution in which no exception is made on the right of the surviving widow in the absence of children, to take as sole distributee the entire net estate of her husband. The court in giving effect to the statutory provisions on descent and distribution, on page 426 say:

"It seems to be held by the courts in all states that where a statute of descent and distribution is plain and unambiguous in prescribing how property shall descend and vest upon the death of its owner, such statute must be given effect by the courts, regardless of the fact that the death of the owner was intentionally caused by one to whom, under the statute, his property is made to descend and vest, * * * it seems to us, still, in view of the plain provision of the statute quoted, and what seems to us to be an unbroken line of decisions by courts of last resort in other states on the question, we are constrained to hold that Margurite

Murchison, even though she did feloniously take the life of her husband for the purpose of sooner collecting the insurance money upon his life, did not forfeit her right thereto, as cast upon her by the statutory law of this state."

In the case of National Life Ins. Co. v Hood's, Admr., 94 S. W. (2d Series) 1022 (Ky.) (1936), the court held:

"Where incontestable life policies unconditionally provided for payment upon insured's death, reserved to insured right to change beneficiary, and provided that, if beneficiary should predecease insured, her interest should vest in insured unless otherwise provided by the policies, beneficiary's killing of deceased held to have caused failure of specific beneficiary, which entitled insured's administrator to recover on the policies, even though beneficiary as insured's widow would by virtue of statute participate in the insured's surplus personalty."

Ohio at common law permits the murderer to inherit as an heir of his victim. It is apparent from an investigation of the authorities that the courts which at common law permitted a murderer to inherit as an heir of his victim, are inclined to hold that the beneficiary who is denied the right to recover the proceeds of the insurance policy by reason of his felonious act in taking the life of the insured, may, nevertheless, participate in such insurance proceeds as an heir of his victim. It is also apparent from an investigation of the authorities on this legal proposition that the courts in most instances have made a distinction between those cases where the beneficiary is a sole distributee of the estate, and those cases where the beneficiary participates in the assets of the estate with other heirs, and are inclined to deny the right of the sole distributee to inherit as an heir, but to permit the beneficiary to participate with the other heirs, in that portion of the estate represented by such insurance proceeds.

Although we find no case squarely in point on the principal questions involved in the instant case, we are not entirely without judicial expression by the courts of Ohio on the legal proposition raised herein. The case of National Benefit Life Ins. Co. v Davis, supra, was one in which the beneficiary in the policy had murdered the insured and by reason of such felonious act was not entitled to recover the proceeds of the policy. The administrator of the insured filed a suit against the insurance company to recover the insurance proceeds. It was contended in that case that inasmuch as the beneficiary, being the widow, would be entitled to a distributive share of the estate of the insured, the administrator should not be permitted to recover the insurance proceeds. The court in disposing of this contention, on page 459 say:

"Now it is argued that, if the admininstrator is permitted to recover, the wife or widow of the insured, being one of those entitled to a distributive share of the estate, would thus indirectly take the benefits, or be interested in the benefits derived from the suit, and, therefore, it will be defeating the authority laid down in 82 Ohio State, supra. It must be remembered, however, that she will not take in such case as a beneficiary, but the money goes into the estate, which, but for her felonious and willful act, had the insured died, would have all gone to her, and no part of it to the estate; but in cases like the instant case, if she gets anything it will not be by way of beneficiary, but as one of those who are entitled to a distributive share of the husband's estate, and before her distributive share could be obtained by her the debts of the estate and the cost of administration must have been paid; but, however this may be, it is not right that the insurance company after receiving the premiums should be able to avoid responsibility upon the policy."

It will be observed that the issue presented in the instant case was not squarely before that court, and the words quoted from the opinion are obiter dictum, as tne widow was not a party to the suit. However, this court is inclined to apply the same reasoning to the facts in the case at bar. In this case, a portion of the insurance proceeds will be used to pay the debts of the decedent and the costs of administration, and a portion will pass under the provisions of the will to the four children of the decedent. The widow will be benefited by receiving a larger amount of money in lieu of property not deemed assets of the estate, under §10509-54, GC, and will receive a larger share in the distribution of the net estate. However, she does not take as beneficiary of the policy, but as widow and heir. But for her felonious act, the entire proceeds of the insurance policy upon the death of the insured would have been paid to her and no part of it to the estate. The creditors of the esttae can not for any reason be denied the use of the insurance proceeds for the payment of their claims.

The court having found that the estate of the insured was legally entitled to the insurance proceeds for certain purposes, it was entitled to such proceeds for all purposes. Once when such insurance proceeds are received by the estate of the decedent, it loses its identity, and the right denied to the beneficiary to recover under the contract of insurance by reason of her felonious act, does not follow said proceeds into the hands of the executor of the decedent's estate. The insurance proceeds are not held by the executor of the estate as a special fund for a special purpose, or for the special benefit of certain persons, but such proceeds become general assets of the estate subject to be expended and distributed, according to law, in like manner as any other assets of said estate.

The contention is made, however, that the legislature in enactiong §10503-17, GC declared a new public policy precluding the right of a murderer convicted of murder in the first or second degree to inherit from his victim, and

in harmony with this new public policy the courts of our state should now reject the old common law rule which prevailed in Ohio, and adopt the rule that the murderer, in receiving the property from his victim, holds said property as a constructive trustee for the benefit of the heirs of the victim. The public policy of the state relative to the devolution of property is expressed in the acts of the legislature, and the courts are not justified in attaching to these acts, exceptions or limitations which have not been placed thereon by the law-making body.

The court is led to inquire as to what the state legislature has declared to be the public policy of this state, in the enactment of §10503-17. The state legislature did not declare it to be the policy of this state that a murderer at all events should not inherit from his victim. A careful study of this section will disclose that it was not the intention of the legislature under all circumstances to abrogate or modify the common law rule which has heretofore prevailed in Ohio, which permits a murderer to inherit from his victim. The legislature did say that a murderer, upon conviction of murder in the first or second degree, should be deprived of his right to inherit from his victim. The new public policy declared by the state legislature must be limited in its application to a set of facts which falls within the purview of this section. It does not follow that the state legislature intended to declare a public policy on any other given set of facts, and therefore by the enactment of this statute did not abrogate the common law rule which in Ohio permits the murderer to inherit from his victim. Since the effective date of §10503-17, GC, the Supreme Court of Ohio refused to apply the doctrine of constructive trust in the case of Oleff v Hodapp, 129 Oh St 432, 2 OO 409, (1935). In that case the court had before it the question as to whether the theory of a constructive trust should be applied in a case wherein the murderer and the victim were owners of a joint and survivorship account in a building and loan associa-

tion. A strong dissenting opinion held to the view that the court should adopt the theory of constructive trust, but in the majority opinion the court rejected this theory and approved of the common law rule which for many years had prevailed in Ohio. The court in the case of Oleff v Hodapp could have held that the enactment of §10503-17 declared a new public policy and required a change in the common law rule, but it did not do so. The Supreme Court having rejected the theory of constructive trust, this court would be constrained to reject the application of this theory to the facts in the instant case. In the interpretation and application of the provisions of §10503-17, GC, to the facts in this case, this court is disposed to follow the principle of law which has been consistently followed by the courts of Ohio for many years, and hold that unless the facts show a conviction of murder in the first or second degree, so as to place the case within the provisions of this statute, the common law rule applies; and in applying the common law rule this court holds, that a person who as beneficiary is denied the right to recover the proceeds of an insurance policy by reason of having feloniously killed the insured, is not precluded as widow and heir of the estate of the insured from participating as such in the insurance proceeds after such proceeds become a part of the general assets of said estate, where she is not the sole distributee.

Finally, shall the widow's interest and share in the estate be distributed to her guardian, or be impounded pending the outcome of her trial under the indictment should she be restored to sanity? The contention is made that should the court order the share of the widow paid to her guardian, it might be consumed and could not be recovered for the benefit of those who would otherwise take said interest in the event of a conviction.

Unquestionably, the interest of the widow under the statutes of descent and

distribution vested in her at the time of her hus-husband's death. Since the legilature has not written into the law any limitation on her right to take such interest, by what principle of·law may she be denied the immediate enjoyment of her estate? By what twist of logic may the court hold that her interest vests, and at the same time deny her the incidents of a vested estate? The intestate law of Ohio casts the estate upon certain designated persons as heirs and distributees of the decedent's estate. A compliance with these laws is absolute and peremptory, and however unjust the result may appear to be the court dare not digress from the clear provisions of the statute, even though it be done in an effort to establish by judicial construction a more just and enlightened public policy. There can be no public policy which contravenes the positive and unambiguous language of the statute. So far as the devolution of property is concerned, the courts are practically unanimous in holding that all the power and responsibility rests with the legislature. When the legislature speaks in clear language upon a question of policy, and does not transcend the limits of its power, it becomes the judicial tribunal to give effect to such legislation and otherwise to remain silent. **Woodbury & Co. v Berry, 18 Oh St 456, 463; Bruner v Briggs, 39 Oh St 478, 484.** The provisions of §10503-17 clearly manifest an intention of the legislature that the estate should vest, that title should pass, and that the estate may be possessed and fully enjoyed by the heir before conviction. In the case at bar, the inheritable interest will be held by the guardian and invested and expended under order of the court, which affords some protection, though slight, to the persons whose interest would be affected by a conviction.

The appraisers set off as a year's allowance to the widow and minor child, the sum of $350. The court coming on to apportion that sum between the widow and the minor child, Arthur, gives to the widow $175, and to the minor child, $175.

Accordingly, the court finds that the guardian of the widow is entitled to receive the sum of money allowed to her in lieu of property not deemed assets of said estate under §10509-54, and her portion of the year's allowance under §10509-74, together with her distributive share in the net estate, and, also, is entitled to a certificate of transfer of her interest in the real estate, if any remains unsold.

Counsel will draw the proper entry.