## Commonwealth *vs.* Thomas J. Mortimer, Fourth, & another.[1]

Middlesex. March 5, 2012. - July 13, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Practice, Criminal,* Assistance of counsel. *Words,* "Available funds."

Discussion of qualifications of criminal defendants for entitlement to appointed counsel as indigent or indigent but able to contribute. [752-753]

This court remanded for further proceedings a Superior Court judge's order finding a criminal defendant, who was charged with the murder of his wife, mother-in-law, and children, indigent but able to contribute to his defense and assessing the defendant's ability to contribute at a specified amount, where no factual findings were made regarding the availability of assets held either jointly with or in trust for the decedents, in light of principles embodied in G. L. c. 265, § 46, the so-called "slayer statute," which prohibits any person charged with the unlawful killing of the decedent from taking from the decedent's estate. [753-754]

This court concluded that a judge determining a criminal defendant's indigency may properly consider funds held in an individual retirement account to be available funds, at least absent evidence demonstrating that a Federal statute or federally regulated retirement plan structure makes such funds in a particular case completely unavailable to a defendant as a matter of law, and that the defendant has the burden to establish the net remaining funds actually available, depending on preretirement withdrawal penalties and tax burdens. [754-759]

Indictments found and returned in the Superior Court Department on August 26, 2010.

A question of law was reported to the Appeals Court by *Elizabeth M. Fahey*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Ryan M. Schiff*, Committee for Public Counsel Services (*Beth L. Eisenberg*, Committee for Public Counsel Services, with him) for the defendant.

*Natalie S. Monroe*, Assistant Attorney General, for the intervener.

[1]Administrative Office of the Trial Court, intervener.

CORDY, J. Pursuant to S.J.C. Rule 3:10, § 1 (g), as amended, 416 Mass. 1306 (1993), a judge in the Superior Court found that the defendant, Thomas J. Mortimer, IV, was indigent but able to contribute $40,000 to his defense against indictments charging him with the murders of his wife, mother-in-law, and two children. In setting the amount of the defendant's required contribution, the judge considered various assets that the defendant had reported to the probation department, including bank accounts, a college fund, and an individual retirement account (IRA). She also voiced "concerns as to the correctness" of her findings with regard to the defendant's indigency status and the amount of his contribution[2] and, thus, reported the propriety of her decision to the Appeals Court. See Mass. R. Crim. P. 34, as amended, 42 Mass. 1501 (2004). We subsequently granted the defendant's application for direct appellate review.

The defendant contends that the order is in error because in the judge's calculation of assets available to him, she incorrectly included assets held either jointly with his deceased wife or in trust for one of his deceased children — assets that are currently unavailable to him under the so-called "slayer statute," G. L. c. 265, § 46 (§ 46). The defendant also urges us to rule that his IRA lies outside the definition of "liquid assets" included in S.J.C. Rule 3:10, § 1 (h), and accordingly, that it should not be considered as an asset available to him for purposes of determining his indigency or his ability to contribute to the cost of his counsel.

We conclude that a significant portion of the assets the judge included in the defendant's indigency determination are likely unavailable to him in light of the constraints of § 46, and that the order of the judge must be vacated and the case remanded for further findings. We also conclude that an IRA is ordinarily to be considered a liquid asset available to the defendant within the meaning of S.J.C. Rule 3:10 and may properly be included in the assessment of his ability to pay for his representation, at

---

[2]The judge also raised questions regarding the appropriateness of appointing counsel for the indigency determination proceeding and requiring a time frame within which the defendant must make his contributions. As we are vacating her order and remanding the case for further factual findings, we do not reach these issues.

least up to the net amount available to him after accounting for any early withdrawal penalties and taxes. On remand, it will be the defendant's burden to establish the applicability and amount of any penalties or taxes to be deducted from the gross value of the IRA.

*Factual and procedural history.* The defendant was indicted on August 26, 2010, and held without bail. Prior to his arraignment, a probation officer interviewed the defendant and completed an initial "Pretrial Intake/Indigency Report" (short form). During that interview, the defendant represented that he owned two vehicles and had $1,000 in a checking account and $13,000 in an IRA. Based on that information, the probation officer determined the defendant was "not indigent." Counsel, however, was appointed by the presiding clerk-magistrate to represent the defendant at his arraignment. Thereafter, the defendant's court-appointed counsel met with the acting chief probation officer and agreed jointly to recommend that the defendant be categorized as "indigent but able to contribute" $10,000 to his defense.

A Superior Court judge then scheduled a hearing for September 9, 2010, to consider further the appointment of counsel and, in anticipation of the hearing, instructed the probation department to reinterview the defendant and complete a more detailed financial statement (long form). In the course of that interview, the defendant identified additional assets, including a college fund for his oldest deceased child with an estimated value of $25,000,[3] and a bank account held jointly with his wife containing $500. The defendant also estimated the value of his previously reported IRA at $14,000 and his two vehicles at $10,000 and $1,000, respectively.

At the hearing, the judge reviewed both indigency forms and considered the joint recommendation of defense counsel and the acting chief probation officer. The discussion between the judge and defense counsel centered around the defendant's ability to pay for counsel given his disclosed assets and, particularly, the college fund. Defense counsel noted possible proceedings in the Probate and Family Court that might prevent the defendant from

[3]The probation officer marked "wife" next to the college fund and noted it was "for child #1."

gaining access to that fund. The judge suggested that the defendant should be able to contribute more than $10,000 to his defense. There was no mention of § 46 and the constraints it might impose on the defendant's ability to gain access to any of the disclosed assets.

In an order issued on October 1, 2010, the judge found that, in light of the anticipated cost of retaining counsel in a capital case, the defendant was indigent but able to contribute to his defense. "[G]iven his bank accounts, IRA funds, and his deceased child's college funds," the judge assessed the defendant's ability to contribute at $40,000, which she directed the defendant to pay to the clerk's office "within thirty days, or whatever additional time is permitted by the court."

*Discussion.* "It is beyond debate that an indigent defendant is entitled to court-appointed counsel for trial of a serious crime." *Commonwealth* v. *Babb*, 416 Mass. 732, 735 (1994). The Legislature has identified two categories of individuals qualifying for appointed counsel: (1) persons indigent and unable to obtain counsel and (2) persons indigent with the ability to pay a reduced fee for appointed counsel. G. L. c. 211D, § 2.

Supreme Judicial Court Rule 3:10 provides further definition to these categories.[4] A party is "[i]ndigent" if, inter alia, he or she receives certain types of public assistance, has an annual income that is 125 per cent or less of the current poverty threshold, or is held in custody with no available funds. S.J.C. Rule 3:10, § 1 (f). A party is "[i]ndigent but [a]ble to [c]ontribute" if, inter alia, he or she is "charged with a felony within the jurisdiction of the Superior Court and [has] available funds . . . insufficient to pay the anticipated cost of counsel for the defense of the felony but . . . sufficient to pay a portion of that cost."[5] *Id.* at § 1 (g) (ii). "Available [f]unds" are defined within the rule to include a "party's liquid assets and disposable net monthly income calculated after provision is made for the party's bail obligations." *Id.* at § 1 (b) (i).[6]

---

[4]See *Commonwealth* v. *Porter*, ante 724, 726 n.4 (2012).

[5]Parties may also be considered "[i]ndigent but [a]ble to [c]ontribute" if they have "an annual income, after taxes, of more than [125 per cent] and less than [250 per cent] of the then current poverty threshold." S.J.C. Rule 3:10, § 1 (g) (i), as amended, 416 Mass. 1306 (1993).

[6]Section 1 (b) (ii)-(iv) of S.J.C. Rule 3:10, as amended, 416 Mass. 1306

Our focus is on the defendant's available funds, as calculated by the judge.[7] Because § 46 may bear directly on the availability of the assets relied on by the judge, our analysis first considers the assets held either jointly between the defendant and his deceased wife or in trust for his deceased child and then separately addresses the defendant's IRA.

1. *Joint and beneficiary assets.* Section 46, which became effective in 2003, prohibits "any person *charged* with the unlawful killing of the decedent from taking from the decedent's estate; . . . including property held between the person charged and the decedent in joint tenancy or by tenancy in the entirety" (emphasis added). In this respect, it codifies the long-standing public policy of preventing individuals from benefiting from their felonious acts. See, e.g., *Egelhoff* v. *Egelhoff ex rel. Breiner*, 532 U.S. 141, 152 (2001) (noting adoption of slayer statutes in most States and "historical pedigree" of underlying principle); *Slocum* v. *Metropolitan Life Ins. Co.*, 245 Mass. 565, 567 (1923) (recognizing policy in insurance context).

Section 46 applies only to murder and manslaughter charges and specifically prohibits a judge from "distribut[ing] the accused's share of the decedent's assets until a verdict or finding on the charge has been rendered in open court." If a defendant is convicted of murder or manslaughter, he is considered to have predeceased the decedent for purposes of disposing of the

(1993), includes other categories within the meaning of "[a]vailable [f]unds" that are not relevant here.

[7] The defendant argues for the first time on appeal that he qualifies as indigent, rather than indigent but able to contribute under S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993). The defendant's interpretation of the rule is that some existing stream of disposable income is necessary to satisfy either prong of the "[i]ndigent but [a]ble to [c]ontribute" definition. This is incorrect. A party may be deemed indigent but able to contribute either by having an annual income within a certain range or by having available funds insufficient to cover the anticipated legal costs. S.J.C. Rule 3:10, § 1 (g) (ii). Available funds include both net monthly income and liquid assets. *Id.* at § 1 (b) (i). Having no disposable net monthly income does not mean a party has no available funds. Rather, the "disposable net monthly income" portion of the equation is set to zero for a party without income, and available funds are defined by the party's liquid assets alone. Because the judge determined the defendant has available funds in the form of, inter alia, his bank accounts and individual retirement account (IRA), he is properly considered indigent but able to contribute.

estate; thus, he is excluded from it. *Id.* However, if a defendant is acquitted of such a charge, he may take from the estate by distribution or descent, as allowed by law. *Id.*

The defendant is charged with the murder of his wife, mother-in-law, and children. Consequently, § 46 applies. As such, a judge may not allow the defendant access to any assets in the victims' estates (including assets that were held between the defendant and the deceased in "joint tenancy or by tenancy in the entirety") unless and until he is found not guilty. The factual record before the court indicates that some of the assets considered in the defendant's indigency determination likely come within the statute's constraints, including the joint bank account, the college fund, and the vehicles.[8] However, outside a brief comment by defense counsel at the hearing that there "may be proceedings in the probate court" resulting in the defendant's forfeiture of rights to the college fund, there is no indication that the parties directed the judge to § 46 or that the judge considered its application to the issue before her.

Typically, this court does not "substitute [its] judgment for that of the trial judge on the factual issue whether the defendant [is] able to pay for counsel." *Commonwealth* v. *Delorey*, 369 Mass. 323, 330 (1975). However, in this case it appears factual findings were not made regarding the availability of the assets in light of the principles embodied in § 46. Consequently, it is necessary that the case be remanded for a determination whether any of the defendant's identified assets were part of the decedents' estates or held jointly with the decedents and, if so, for an appropriate recalculation of the defendant's ability to contribute to his defense.[9]

2. *Individual retirement account.* The definition of "[a]vailable [f]unds" in S.J.C. Rule 3:10, § 1 (b) (i), includes both "dispos-

---

[8] On appeal, the intervener filed with the court motor vehicle registration records that suggest that the vehicles were owned by the defendant's deceased wife. It is unclear, however, whether and how the vehicles factored into the judge's indigency calculation. The judge's order indicates that she assessed the defendant's ability to contribute based on his bank accounts, IRA funds, and the college fund. The intervener contends the judge also considered the vehicles in her indigency evaluation. Regardless, if on remand the vehicles should be found either to be the property of the defendant's wife or to be joint assets, they cannot be considered available to the defendant.

[9] Orders regarding assets or income "may be modified by the court upon a

able net monthly income" and "liquid assets." The defendant argues his IRA should be excluded from his indigency calculation because the funds do not fall within either category.

First, relying on the United States Supreme Court decision in *Rousey* v. *Jacoway*, 544 U.S. 320, 331 (2005) (*Rousey*), the defendant asserts the IRA funds cannot be disposable net monthly income because they are properly categorized not as present income, but as "deferred income." *Rousey*, however, rested on the specific terms of a provision in the United States Bankruptcy Code that exempts from bankruptcy proceedings "payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service." 11 U.S.C. § 522(d)(10)(E) (2006). *Rousey*, *supra* at 329. The Court concluded that IRAs are similar to those enumerated items and, because there is often a substantial penalty for early withdrawal from an IRA intended to deter early access, further found that IRAs are properly classified as plans that provide "a right to receive payment on account of age." *Id.* at 329-332. Thus, the Court held that IRAs are exempt from bankruptcy proceedings.[10] *Id.* at 333.

There is no comparable language in S.J.C. Rule 3:10 suggesting that age-dependent accounts should be excluded or exempted from the available funds calculation. Thus, the *Rousey* categor-

---

showing by either the defense or the prosecution of changed circumstances." Reporter's Notes to Mass. R. Crim. P. 33, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1680 (LexisNexis 2011-2012). See S.J.C. Rule 3:10, § 7. A judge may, in the interest of justice, appoint counsel for a defendant unable to gain access to funds due to G. L. c. 265, § 46, and require the party to reimburse the Commonwealth for the costs of representation if he is later acquitted. See *Fuller* v. *Oregon*, 417 U.S. 40 (1974); *Commonwealth* v. *Salim*, 399 Mass. 227, 238-239 (1987) (deeming "sound public policy" judge's decision that recognized "defendant should bear the burden of his reasonable counsel fees if he became able to do so").

[10]In *Rousey* v. *Jacoway*, 544 U.S. 320, 334 (2005) (*Rousey*), the United States Supreme Court also noted that the exemption provision to the United States Bankruptcy Code contains an exception that specifically lists plans that do not qualify under several sections of the Internal Revenue Code, including 26 U.S.C. § 408 (2006) (governing IRAs). This strengthened the Court's conclusion that Congress intended IRAs to be exempt from bankruptcy proceedings because it would not make sense to exclude from the exemption plans failing to qualify under 26 U.S.C. § 408, unless qualifying plans were within the exemption. *Rousey*, *supra*.

ization of an IRA for bankruptcy purposes is not instructive as to whether it should be considered income under S.J.C. Rule 3:10. However, S.J.C. Rule 3:10, § 1 (e) specifically includes money received from pensions, annuities, and Social Security in the definition of income. Because this indicates that these accounts are not considered income until payments are disbursed, we agree that the defendant's IRA is not properly categorized as income.

Next, the defendant asserts that the funds in his IRA should not be included in the indigency evaluation because they are not liquid assets within the meaning of S.J.C. Rule 3:10. To make this argument, the defendant attempts to redefine the term "available funds," of which liquid assets and net monthly income are subsets, to mean funds "present or ready for *immediate* use." See Webster's Third New Int'l Dictionary 150 (1995) (definition of "available"). He then applies the *Rousey* characterization that IRAs are "deferred income" to assert that such retirement accounts are not sufficiently similar to "[c]ash, savings accounts, bank accounts, stocks, bonds, certificates of deposits, equity in real estate, [or] equity in a motor vehicle or in other tangible property" to qualify as liquid assets. S.J.C. Rule 3:10, § 1 (h). As a deferred income account, immediately accessible only after paying a substantial penalty, the defendant argues that the IRA cannot satisfy the availability requirement for liquid assets.

The defendant's proposed definition of "available," however, does not properly describe the list of liquid assets that qualify as available funds in S.J.C. Rule 3:10. "When elements are listed in a series, the rules of statutory construction require the general phrase to be construed as restricted to elements similar to the specific elements listed." *Commonwealth* v. *Zubiel*, 456 Mass. 27, 31 (2010). Significantly, liquid assets under the rule are not limited to cash, savings accounts, or banks accounts, but also include certificates of deposit and equity in real estate. S.J.C. Rule 3:10, § 1 (h). These assets are similar to IRAs in that they are not immediately available in the same sense as cash or funds in a bank account, nor are they accessible without incurring costs or penalties. Equity in real estate often cannot be obtained without selling or mortgaging the property, both of

which can be complicated, costly, and time-consuming endeavors. Similarly, certificates of deposit often require payment of penalties for withdrawing funds before a deposit matures. Cf. 12 U.S.C. §§ 4301-4313 (2006) (under Truth in Savings Act, banks and depository institutions must disclose amount of penalty on time accounts that "will or may be imposed for early withdrawal, how it is calculated, and the conditions for its assessment"); 12 C.F.R. § 230.4(b)(6)(ii) (2012). Thus, S.J.C. Rule 3:10 does not contemplate an immediacy requirement in establishing whether an asset is available, and an IRA's early withdrawal penalty does not distinguish that asset from the rule's enumerated elements. See S.J.C. Rule 3:10, § 1 (h) (including equity in real or personal property as "[l]iquid [a]ssets," provided that such equity "is reasonably convertible to cash").

Granted, IRAs are different from traditional bank accounts, *Rousey, supra* at 332, in that they are afforded favorable tax treatment, 26 U.S.C. § 408, and substantial penalties are imposed for early withdrawals. In addition, certain types of IRAs receive additional protections under Federal law, such as the employment retirement income security act, and are exempt from attachment or alienation. See 29 U.S.C. § 1056 (2006); 29 C.F.R. § 2510.3-2(d) (2011). All of these characteristics are consistent with a Federal policy intended to encourage retirement savings. See, e.g., *In re Atallah*, 95 B.R. 910, 919 (Bankr. E.D. Pa. 1989), abrogated on other grounds, *In re Kaplan*, 162 B.R. 684, 691 (Bankr. E.D. Pa. 1993).

This policy, however, is not absolute and does not insulate IRAs from their inclusion in a variety of other asset-based calculations used to determine eligibility for publicly funded benefits. For example, the Social Security Administration (SSA) bases eligibility for supplemental security income on income and resources. 42 U.S.C. §§ 1381a, 1382 (2006). Liquid assets, which are included within the definition of resources, include stocks, bonds, mutual fund shares, savings and checking accounts, certificates of deposits, and "similar items." 20 C.F.R § 416.1201(b) (2011). "Similar items," in turn, include retirement funds such as IRAs where the account holder has the option to withdraw funds, even if ineligible for periodic payments. See SSA Program Operation Manual System § 01120.210

(2009). See also *Blaylock* v. *Harris*, 531 F. Supp. 24, 25-26 (W.D. Mo. 1981) (finding agency interpretation that retirement funds are "similar [items]" in resource determination reasonable). Similarly, the Massachusetts Department of Transitional Assistance considers retirement accounts — and IRAs specifically — as "[c]ountable [a]ssets" in determining an individual's financial eligibility to receive Emergency Aid to the Elderly, Disabled and Children benefits. 106 Code Mass. Regs. § 321.120(C) (1994).[11]

Further, the Federal policy of protecting retirement savings must be balanced against the fundamental constitutional right to be represented by counsel in a criminal prosecution and the concomitant public obligation to provide counsel for those who truly cannot afford to be represented in such proceedings. See *Commonwealth* v. *Means*, 454 Mass. 81, 88 & n.13 (2009). Although the Massachusetts Legislature established the Committee for Public Counsel Services (CPCS) in order to provide representation for defendants unable to obtain counsel by reason of their indigency, the public funds supporting CPCS are not unlimited. Recognizing the importance of appointed representation, it is critical to conserve the limited resources for those defendants who are truly indigent and unable to fund their legal representation. See *United States* v. *Parker*, 439 F.3d 81, 109 (2d Cir.), cert. denied, 549 U.S. 985 (2006) (noting limited resources for appointed defense counsel and need to avoid requiring public funding of representation for "financially ineligible defendants"). Defendants with substantial savings in IRAs, accessible after forfeiting an early withdrawal penalty, can reasonably be considered to have funds available for their defense and should be made to exhaust those accounts before the Commonwealth expends its limited resources on their representation. See *Commonwealth* v. *Godwin*, 60 Mass. App. Ct. 605, 611 (2004) (defendants must credibly establish their

---

[11]The regulation provides: "Assets that shall be considered in determining financial eligibility include but are not limited to: . . . *Retirement Accounts and Pensions*. Retirement or pension funds shall be counted in the determination of eligibility if the funds in the plan(s) are accessible to the applicant or recipient. . . . Funds in an IRA are accessible and, therefore, counted as an asset in their entirety less the amount of penalty for early withdrawal." 106 Code Mass. Regs. § 321.120(C)(1) (1994).

indigency "[b]efore the limited funds of the Commonwealth are expended").

For the foregoing reasons, we conclude that a judge applying S.J.C. Rule 3:10 may properly consider funds held in IRAs to be available funds in the indigency determination, at least absent evidence demonstrating that a Federal statute or federally regulated retirement plan structure makes such funds in a particular case completely unavailable to a defendant as a matter of law, a burden the defendant has not met here.[12]

Although we conclude, as did the judge, that some amount of the funds in the IRA will be available for the defendant's defense, the amount will likely be less than the full account balance due to preretirement withdrawal penalties and tax burdens. See United States *vs*. Pani, U.S. Dist. Ct., No. 08-40034-FDS (D. Mass. Aug. 3, 2011) ("The [c]ourt recognizes that if [the defendant] seeks to withdraw [IRA] funds to pay counsel, his withdrawals will be subject both to ordinary tax and an early withdrawal penalty of ten percent"). Because the penalty and tax burdens will vary depending on the type of retirement account and a defendant's particular circumstances, the defendant has the burden to establish the net remaining funds actually available from his IRA. See, e.g., 26 U.S.C. § 72(q) (2006) (ten per cent penalty for premature distributions from annuity contracts); 26 U.S.C. § 72(t)(6) (2006) (twenty-five per cent additional tax on early distributions from simple retirement account within the meaning of 26 U.S.C. § 408[p] [2006]).

Here, although the judge properly considered the IRA as containing available funds within the meaning of S.J.C. Rule 3:10, she did not make any findings regarding the amount of funds ultimately available to support the defense when accounting for penalties and taxes. On remand the defendant may present evidence on this point. See *Commonwealth* v. *Porter, ante* 724, 732-733 (2012) (defendant has burden to establish indigency by preponderance of evidence).

---

[12]The parties in this case do not dispute that the defendant has the burden of establishing his financial inability to secure counsel. In *Commonwealth* v. *Porter, ante* 724, 732-733 (2012), and *Commonwealth* v *Fico, ante* 737, 743-744 (2012), also decided by this court today, we confirmed that a defendant carries the ultimate burden of proving indigency.

*Conclusion.* The order directing the defendant to pay $40,000 toward his defense is vacated and the matter remanded to the Superior Court for further proceedings and findings consistent with this opinion.

*So ordered.*