IN RE: WILL OF GEMMA PRUDENZANO.

(68 A2d 704)

May Term, 1949.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion filed October 4, 1949.

*Hilton A. Wick* for the appellant.

*George L. Agel, Philip W. Hunt* and *A. Pearley Feen* for the appellee.

BLACKMER, J. Albert Prudenzano and Gemma Prudenzano were husband and wife. Prior to 1940 they resided in South Hero. They had no children. On July 10, 1940, they entered into a written separation agreement. The agreement recited that they were separated and living apart, and had agreed on a settlement of all property rights and differences existing between them. Gemma agreed to assume the payment of certain bills of the parties then outstanding in the sum of $2128.01. Albert agreed to convey to Gemma through a trustee all his right, title and interest to real estate in South Hero owned by them as tenants by the entirety. From the time of the execution of the agreement to the time of Gemma's death they did live separate and apart. So far as appears, each one performed his and her part of the agreement. The agreement further recited that it was "a full and complete settlement of all property rights between the parties now and after the death of

either party to this agreement" and that "from this time forward neither party shall have any interest of any kind or nature in or to any property, real, personal or mixed of the other party to this agreement whether now owned by such party or hereafter acquired". There were other provisions of the agreement not material to the case as presented.

On February 15, 1947, Gemma executed a will leaving everything she owned, real and personal, to persons other than her husband Albert. On April first Gemma was killed in a grade crossing accident. Albert survived her. Her will was presented for probate, and was duly allowed by the Probate Court for the District of Grand Isle. In due course of probate an inventory was filed disclosing real estate valued at $5000.00 and personal estate valued at $1,000.12. The commissioners allowed claims against the estate in the sum of $1,712.35.

Albert seasonably waived the provisions of his wife's will, and asked for an assignment of a surviving husband's statutory share of his wife's personal and real estate, and also of a homestead. On March 20, 1948, he again appeared through his attorneys and asked for an assignment of his statutory share of the estate. On April 29, 1948, the Probate Court decreed all of the property to the legatees named in the will. By its decree the court refused to assign or set out to Albert any part of his wife's estate. The decree recited the existence of the separation agreement and the filing of the waiver, and also that it was "giving effect to the aforementioned separation agreement as permitted by law and in the exercise of this Court's discretion".

The appellant Albert's exceptions to the decree raise the questions briefed: (1) Can a husband's right to share in the estate of his deceased wife be barred by a post-nuptial separation agreement, or can it be barred only in the manner provided by the statutes, and (2) does the Probate Court have jurisdiction to give effect to such an agreement?

■ This state has long recognized the validity of post-nuptial agreements generally. *Cleary* v. *LaFrance*, 109 Vt 422, 425-427, 199 A 242. In that case we said at 425 "it is not against public policy to allow the spouses, where the separation has already taken place, or is immediately to take place, fairly to define by contract their mutual rights and obligations with respect to property and to the wife's support, whether such agreement is made directly between the spouses or through the intervention of a trustee".

■ What little appears in the record tends to show that the contract now under consideration was fair and equitable. There is no claim made that it is unfair or inequitable in its provisions, and, in the absence of a showing to the contrary, it is presumptively fair. *Cleary* v. *LaFrance,* 109 Vt 422, 427, 199 A 242.

The great weight of modern authority, both cases and texts, supports the view that a bargain between husband and wife, made after separation, or in contemplation of an immediate separation which takes place as contemplated, whereby the husband contracts to release his interest in the property which his wife shall own on her death is legal if the bargain is fair and equitable in view of the circumstances of the parties. Cases cited in annotations 35 ALR 1505, 1522 and 49 ALR 116, 148; Restatement of The Law of Contracts, § 584; Williston on Contracts, Rev. Ed. Vol. 3, § 1742, page 4930; 26 CJS, Descent and Distribution, § 58b.

The statutory rights of a widower are: (1) Homestead, V. S. 2610, 2614, Rev. 1947, (2) statutory curtesy, being one third at least of his deceased wife's real estate, V. S. 3040, Rev. 1947, (3) one third, at least, of his deceased wife's personal property, V. S. 3018, Rev. 1947, (4) when the spouses are residing together at the time of the wife's decease, all household goods, furnishing, furniture, and household outfit, V. S. 3020, Rev. 1947. This last is obviously not applicable in the instant case.

There are specific ways provided in the statutes by which the first three of the enumerated rights may be barred. Under V. S. 2615, Rev. 1947, the homestead may be forfeited and sold under some circumstances when there are minor children, but that is not the situation here. Statutory curtesy may be barred under V. S. 3042, Rev. 1947, where there is no issue and the widower either elects to take one third of the deceased wife's real estate or waives the provisions of her will and takes the first four thousand dollars and one half the remainder. Statutory curtesy is also barred when the widower accepts the provisions made for him by the last will and testament of his wife. The right to one third, at least, of the personal property may be barred under V. S. 3042, Rev. 1947, in like manner as noted above.

The statutes do not provide that a widower's statutory rights in his wife's estate may be barred by a post-nuptial contract, nor do they provide that they may not be so barred. Nor do the statutes permit or prohibit a widower's statutory rights to be barred by an ante-nuptial contract, but such contracts have heretofore been held

enforceable in equity. *Munsell, Apt.* v. *Munsell's Est.*, 95 Vt 103, 105, 113 A 521; *Smith and Nye, Exrs.* v. *Munsell et al.*, 94 Vt 201, 207, 110 A 12. We believe that the question which is raised here on the statutes cited above never occurred to the General Assembly when it framed the law, and that that body, to the present, has not endeavored to dispose of it. In this view we are fortified by the fact that the end for which the appellant contends is neither fair nor equitable, and therefore not one likely to appeal to the law making body. It would permit appellant to eat his cake, and later to have it also. In *Squires* v. *Squires,* 53 Vt 208, 210-211, 38 Am Rep 668, this court quoted the eminent jurist, Cooley, C. J. in *Randall* v. *Randall,* 37 Mich 563. Although *Squires* v. *Squires* is not direct authority the quotation is pertinent: "When a separation has actually taken place, or it has been fully decided upon, and the articles contain a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during coverture, no principle of public policy is disturbed by them; on the contrary, if they are fair and equal, and are not the result of fraud or coercion, reasons abundant may be found for supporting them, in their tendency to put an end to controversies, to prevent litigation, and to give the wife an independence in respect to her support which without some such arrangement she could not have under the circumstances".

Appellant relies on *Mann* v. *Mann's Estate,* 53 Vt 47, which involved an ante-nuptial contract. It was therein said at p. 54 that a release or discharge is only predicable of something which exists at the time the release or discharge is given, that a covenant never to prosecute operates as a release only when there is an existing demand, that a party cannot be estopped from asserting a statutory right because it is in violation of an executory contract, and that a covenant not to claim a homestead cannot be set up as a bar by way of rebutter. All this is true at law. That the court was not referring to equity jurisdiction is made clear at p. 55, where the court says, "the ante-nuptial contract set forth in the agreed case is not at law a bar, release, or estoppel upon the plaintiff's homestead," and further that the Probate Court had insufficient equity jurisdiction. But at the present moment we are considering the validity of the contract in equity, and it is settled that equity will enforce contracts made directly between husband and wife in proper cases. *Travelers Ins. Co.* v. *Gebo,* 106 Vt 155, 162, 170 A 197; *Cleary* v. *LaFrance,* 109 Vt 422, 428, 199 A 242.

60

What is summarized above from *Mann* v. *Mann's Estate* has no application to the present problem.

Other cases cited by appellant do not advance his position. *In re O'Rourke's Estate,* 106 Vt 327, 175 A 24, is well reasoned and decided, but not inconsistent with the views herein expressed. The doubts expressed in *Graves* v. *Wakefield,* 54 Vt 313, 317, are obiter only. In *Pinkham* v. *Pinkham,* 95 Me 71, 49 A 48, 85 Am St Rep 392, the husband and wife were presumably living together when the agreement was made. *Thayer* v. *Thayer,* 14 Vt 107, 39 Am Dec 211, went off on a point of fraud. *In re Peck's Estate,* 87 Vt 194, 212, 88 A 568 (last paragraph), uses strong language, but all it decides thereby is that a surviving husband can waive testatrix' will under P. S. 2935 and 2936, now V. S. 3041 and 3042. We agree, under the rule in *Blanchard* v. *Blanchard's Estate,* 109 Vt 454, 459, 199 A 233, that when the meaning of statutes and the inferences necessarily to be drawn from them are plain there is no necessity for construction, and it is the duty of the courts to enforce the statutes according to their obvious terms. This opinion does no violence to that principle.

█ It is therefore held that a widower's statutory rights in his deceased wife's estate may be barred in equity by a post-nuptial contract, made after separation or in contemplation of an immediate separation which takes place as contemplated, provided that the bargain is fair and equitable in view of the circumstances of the parties.

The remaining question for determination is whether, on the case as presented, the Probate Court's statutory and equitable powers permitted it to give effect to the agreement.

██ Certain general rules have been formulated concerning the jurisdiction of the probate court. It does not proceed according to the common law, but has a special and limited jurisdiction given by statute, and if it appears on the face of the proceedings that it has acted in a manner prohibited or not authorized by law, its orders and decrees are absolutely void and may be treated as a nullity. *Roddy* v. *Fitzgerald Est.,* 113 Vt 472, 475, 35 A2d 668; *Probate Court* v. *Am. Fid. Co.,* 113 Vt 418, 422, 35 A2d 495. Nothing is presumed in favor of its jurisdiction, and such jurisdiction must be made affirmatively to appear by one who seeks to take advantage of its proceedings. *Roddy* v. *Fitzgerald Est., supra; Probate Court etc.* v. *Indemnity Insurance Co. etc.,* 106 Vt 207, 210; 171 A 336. The leading idea of the Probate Court system

is to confer upon it original, plenary and exclusive jurisdiction in the settlement of estates. *Sparrow* v. *Watson et al,* 87 Vt 366, 370, 89 A 468; *Powers* v. *Powers' Est.,* 57 Vt 49, 52; V. S. 2793, Rev. 1947. It is required by statute to assign the residue of the estate to the persons entitled to the same, and shall name in its order the persons and proportions or parts to which each is entitled. V. S. 3059, Rev. 1947, *In re Estate of Curtis,* 109 Vt 44, 50, 192 A 13.

■ Probate Courts, of necessity, possess a portion of equitable powers independent of statute. *Robinson* v. *Swift, Admr.,* 3 Vt 283, 289; *Spaulding* v. *Estate of Warner,* 52 Vt 29, 32; *Mann* v. *Mann's Est.,* 53 Vt 48, 55; *Heirs of Adams* v. *Adams et al, Admrs.* 22 Vt 50, 59; *Matthews* v. *Drew,* 106 Vt 245, 247, 172 A 638. We add, parenthetically, that the statement to the contrary in *Bailey et al* v. *Bailey et al,* 67 Vt 494, 501, 32 A 470, 48 Am St Rep 826 should not be relied upon, and note that *Robinson* v. *Swift,* supra, was decided prior to R. S. (1839) Chap. 55, Sec. 12, which was the origin of R. L. Chap. 119, Sec. 2300, now V. S. 3132, Chap. 150, Rev. 1947. However, the equity powers conferred upon probate courts do not extend to the establishment of purely equitable claims and rights. *Admr. of Leonard* v. *Exr. of Leonard,* 67 Vt 318, 320, 31 A 783; *Barton Nat'l Bank et al* v. *Atkins et al,* 72 Vt 33, 43, 47 A 176.

■ The jurisdiction of the court of chancery in probate matters is not original, but special and limited, and only in aid of the probate court when the powers of that court are inadequate. *Baldwin, Admr.* v. *Taplin et al,* 113 Vt 291, 295, 34 A2d 117; *Heirs of Adams* v. *Adams, et al Admrs., supra,* p. 58. It must appear among other things, that the probate court cannot reasonably and adequately handle the question. *Matthews* v. *Drew,* 106 Vt 245, 248, 172 A 638; *Heirs of Adams* v. *Adams et al Admrs., supra,* 58.

In 1849 the great Judge Isaac F. Redfield, later Chief Justice, said in *Heirs of Adams* v. *Adams et al, Admrs., supra,* 58, that the construction of all statutes passed upon the subject of probate court jurisdiction had been numerous and, at different periods, somewhat dissimilar. An examination of the cases cited in the briefs, and others, demonstrates that the Judge's remark is true one hundred years later. It is also apparent that the difficulty lies not in the framing of the general rules above noted, but in their application in specific cases.

■ There is, however, at least one instance where the decisions

are in harmony. In *Mann* v. *Mann's Estate, supra,* 55, it was flatly held that it was entirely beyond the jurisdiction of the probate court to specifically enforce an ante-nuptial contract against plaintiff by enjoining her from asserting her legal right to a homestead, the court saying, "It is a matter of equity jurisdiction; and that too arising outside of the ordinary matters pertaining to the settlement of estates," and also "Such contracts, both ante-nuptial and post-nuptial, are peculiarly subjects of equity cognizance. And in courts of equity are upheld and enforced, on the rules and limitations which govern that court in decreeing specific performance of contracts." This holding was soon approved by a dictum in *Graves* v. *Wakefield,* 54 Vt 314, 317, where it was said that doubtless difficulties would be found to exist in giving effect to an ante-nuptial contract, especially in a court as limited in its equity powers and jurisdiction as is the probate court. *Mann* v. *Mann's Est.* was cited as supporting authority. In *Leonard* v. *Leonard,* 67 Vt 318, 320, 31 A 783, *Mann* v. *Mann's Est.* was cited in support of a statement that the equity powers conferred on the probate court do not extend to the establishment of purely equitable claims and rights. It was again approved in *Wilder's, Exrix.* v. *Wilder and Deavitt, Trustee,* 75 Vt 178, 184, 53 A 1072 and cited as authority for the proposition that the probate court has no jurisdiction to grant relief by way of subrogation. *Kittredge b. n. f. et al* v. *Kittredge,* 79 Vt 337, 65 A 89, was a bill on a post-nuptial contract between a wife and her children by a former husband against her then husband, the subject matter being a farm which the wife owned in her own right, and in which the husband claimed an interest by virtue of the marital relation. The Mann case was cited at 340 to establish that the contract was peculiarly one for cognizance and enforcement in a court of equity. Again in *Cleary* v. *LaFrance,* 109 Vt 422, 427, 199 A 242, it was said that the Mann case (p. 55) recognized that a post-nuptial contract might, in a proper case, be upheld and enforced in equity.

The holding of the Mann case, then, has been approved five times since it was announced. Other cases are in accord. *Smith and Nye, Exrs.* v. *Munsell,* 94 Vt 201, 110 A 12, and *Munsell Apt.* v. *Munsell's Est.,* 95 Vt 103, 113 A 521, read together, hold that the court of chancery, acting in aid of the probate court, may specifically enforce an ante-nuptial contract barring the surviving husband from marital rights in his wife's estate.

It is true that much of the authority cited above has to do with

ante-nuptial contracts. On the question of jurisdiction of the probate court and court of chancery, however, we see no significant distinction between ante- and post-nuptial contracts, and none has been pointed out to us.

 It is also urged by appellee in support of probate court's jurisdiction that under V. S. 3059, Rev. 1947, the court must assign the estate to the persons entitled to the same, naming the persons and proportions or parts to which each is entitled. This statute has been in force in substantially the same form since Acts of 1821, Chap. 3, § 79, p. 58. Since the legislature has not provided for a different construction, it carries with it by reenactment the construction placed on it by the line of cases cited above, beginning with *Mann* v. *Mann's Est.* (1880) and ending with *Cleary* v. *La-France* (1938). *Re Est. of Woolley*, 96 Vt 60, 64, 117 A 370. As we have seen, these cases are adverse to appellee's contention. Further we are asked to recognize the probate court's jurisdiction to pass on separation agreements as an ancillary and incidental power, reasonably necessary to an effective exercise of the powers conferred. That the probate court has some such ancillary and incidental powers may well be, but that question need not be determined now. Suffice it to say, that for reasons hereinabove set out, it has no such powers in the case at hand.

It is, in consequence, adjudged that the jurisdiction over the construction and enforcement of the post-nuptial contract between Albert and the late Gemma Prudenzano, formerly husband and wife, lies in the court of chancery, and not in the probate court.

*Decree reversed, and cause remanded, with directions that the proceedings herein be stayed for sixty days to give the administrator c. t. a. of the will of Gemma Prudenzano an opportunity to apply to the Grand Isle County Court of Chancery for relief. If application is so made, proceedings herein shall be stayed pending the final determination thereof. If application is not so made, the Probate Court for the District of Grand Isle shall assign to Albert Prudenzano, surviving husband, that right and interest in and to the estate of his deceased wife which the Vermont statutes confer.*