JOHN B. MANLEY, JR., ET ALS. *v.* BRATTLEBORO TRUST CO., ET ALS.

(78 A2d 488)

January Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed February 6, 1951.

*Barber & Barber* and *J. Dinsmore Adams* (of the New York bar) for the plaintiffs.

*Francis E. Morrissey* and *Guy M. Page* for the defendant Trust Company.

*Gibson & Crispe, Ralph Chapman* and *John S. Burgess* for defendants Haus.

BLACKMER, J. The plaintiffs brought their bill dated August 19, 1949, to the Windham County court of chancery. The bill makes these allegations in substance. John B. Manley by his last will and testament duly probated created a trust. The defendant Brattleboro Trust Company, a corporation, was named as trustee. It qualified and has since acted in that capacity. The plaintiffs are the cestuis que trust. The part of the trust res in dispute is improved real estate in Brattleboro known as Manley Apartments. Bernard H. Haus was at all consequential times a director of the Trust Company. His administrator, Bernard T. Haus, is a defendant. Bernard H. Haus' brother, Edmund J. Haus, also a defendant, was the proprietor of a business called Brattleboro Motor Company; Bernard H. Haus owned an interest in it. The Trust Company, as trustee, leased the first floor and basement of Manley Apartments to Edmund J. Haus for a term of seven years from November 1, 1939, to October 31, 1946. On April 3, 1942, the Trust Company leased the first floor to Edmund J. and Bernard H. Haus for a term of three years from August 1, 1942, to July 31, 1945, with the privilege of an extension for five years to July 31, 1950, at an annual rental

of $2100.00. Thereupon the lessees sublet this first floor to the Grand Union Company on substantially the same terms, but at a greatly increased annual rental of $3300.00 Edmund J. Haus knew that the Trust Company was acting as trustee, and also knew that Bernard H. Haus was a director of the Trust Company. All three knew at the time the lease of April 3, 1942 was being negotiated that the Grand Union Company was prepared to sub-lease at the larger rental noted above. Then the Trust Company permitted Edmund J. and Bernard H. Haus to sub-lease the basement to Montgomery Ward Company at an annual rental of $900.00 through 1945, $1500.00 for 1946, and $2100.00 for 1947 and thereafter. On August 1, 1946, the Trust Company leased both the basement and the first floor to Edmund J. and Bernard H. Haus for a term of four years from August 1, 1946, to July 31, 1950, at an annual rental of $2100.00. The Trust Company denies that it is trustee of the rents and profits derived from the sub-leases. Edmund J. Haus and Bernard H. Haus' administrator hold the leases and sub-leases, and all income and profits derived therefrom as constructive trustees and should be required to account. Since August 1, 1942, the Trust Company has "reported" only income of $2100.00 per annum on the first floor premises, plus various rentals on the basement. Edmund J. Haus, Bernard H. Haus and his administrator have derived and will continue to derive profits from the premises, but they refuse to pay to the Trust Company anything except the annual rental of $2100.00 reserved in the lease of April 3, 1942. These profits can only be determined by an accounting. The plaintiffs have demanded that the Trust Company account for the profits derived by Edmund J. and Bernard H. Haus and the latter's administrator, but the Trust Company has refused and will refuse until after July 31, 1950. The plaintiffs have demanded that the Trust Company require Edmund J. Haus and Bernard H. Haus' administrator to transfer to the Trust Company all leases and sub-leases, but the Trust Company has refused. Edmund J. Haus and Bernard H. Haus' administrator have also refused to transfer such leases and sub-leases to the Trust Company, or to account to it for the profits derived therefrom. The Trust Company has made charges for its services which should be re-examined by the court of chancery.

The prayers are that the Trust Company distribute the profits derived by the Haus from the leases and sub-leases; that the Haus be decreed constructive trustees and required to pay their profits

under the leases to the Trust Company; and that a portion of the Trust Company's fees be adjudged improper.

The bill, in sum, charges the Trust Company with self-dealing, and knowingly permitting others to profit at the expense of the trust.

The defendant Trust Company demurred to the bill on the ground that jurisdiction of the matters alleged lay in the probate court, not in the court of chancery, and that the bill was without equity. The defendants Edmund J. Haus and Bernard H. Haus' administrator answered, and later moved that if the Trust Company's demurrer were sustained, the same entry be made for them. After hearing, the demurrer was sustained and the bill was dismissed as to all defendants.

The first question for consideration is whether jurisdiction of the matters alleged lies in the court of chancery or in the probate court.

 The probate court has general equity powers in regard to trusts and trust funds that arise in the settlement of estates. *Abbott* v. *Abbott,* 112 Vt 449, 452, 28 A2d 375; *First National Bank* v. *Harvey,* 111 Vt 281, 295, 16 A2d 184; *Foss, Trustee* v. *Sowles,* 62 Vt 221, 224, 19 A 984; V. S. 47, Chapter 150, particularly V. S. 47, § 3132. Testamentary trustees, like executors, are strictly accountable to the probate court in the management and disposition of the trust estate. *First National Bank* v. *Harvey, supra,* 296; V. S. 47, § 3129. However, these general equity powers are not as extensive as the full powers of the court of chancery. *Re Watkins Estate,* 114 Vt 109, 137, 41 A2d 180, 157 ALR 212; *Wetmore & Morse Granite Co.* v. *Bertoli,* 87 Vt 257, 264, 88 A 898; *Wilder's Exrix.* v. *Wilder & Deavitt,* 75 Vt 178, 184, 53 A 1072. Probate Courts do not have all the means employed by courts of chancery to enforce their decisions. *Robinson* v. *Swift,* 3 Vt 283, 289. They must proceed in accordance with the statutes conferring jurisdiction; these statutes prescribe the manner of the exercise of equity powers by probate courts. *Foss, Trustee* v. *Sowles, supra,* 224, 228.

 The jurisdiction of the court of chancery in probate matters is not original, but special and limited, and only in aid of the probate court when the powers of that court are inadequate. It must appear, among other things, that the probate court cannot reasonably and adequately handle the question. *In re Will of Gemma Prudenzano,* 116 Vt 55, 61, 68 A2d 704; *Boyden* v. *Ward.*

38 Vt 628, 633. Testamentary trusts arise in the settlement of a testator's estate in due course of procedure, *In re Cary's Estate,* 81 Vt 112, 120, 69 A 736, a fact which makes these general principles applicable. V. S. 47, § 3132 provides that "the probate court may further hear and determine in equity all other matters relating to" testamentary trusts, among others. But this statute does not preclude the established jurisdiction of the courts of chancery. V. S. 47, § 3132 had its origin in R. S. 1839, C. 55 § 12. Except for *Robinson* v. *Swift, supra,* all the cases cited on the question of jurisdiction were decided subsequent to 1839. In particular, *Wilder's Exrix.* v. *Wilder & Deavitt, supra,* handed down in 1902, held that the court of chancery had jurisdiction over a testamentary trustee on an issue of subrogation.

In furtherance of these established rules, we are of the opinion that the plaintiffs are properly in chancery rather than in probate court. They cannot proceed through the trustee, it having denied responsibility and having refused to proceed against the other defendants. The beneficiaries are thereby entitled to carry on in their own right. *Marsh* v. *Marsh,* 78 Vt 399, 403, 63 A 159; *Hall* v. *Windsor Savings Bank,* 97 Vt 125, 135, 121 A 582, 124 A 593; Bogert on Trusts and Trustees, Secs. 870 and 871.

The plaintiffs seek property which they say rightfully belongs to the trust estate, specifically the leases and their proceeds. This property is said to be in the hands of Edmund J. Haus and Bernard H. Haus' administrator as constructive trustees. It and they are not subject to the jurisdiction of the probate court. *Bailey* v. *Bailey,* 67 Vt 494, 500, 32 A 470; *Marsh* v. *Marsh, supra,* 404; *In re Cary's Estate, supra,* 120. Although the defendant Trust Company as trustee is strictly accountable to the probate court, such a proceeding would reach neither the Haus, the leases, nor the avails thereof. *In re Cary's Estate, supra,* 120. If the trustee has accounted to the probate court in connection with these matters, the defendant Trust Company can show the facts, for what they may be worth, in its answer. And after the court of chancery has aided the probate court so far as it can and should, it will remit the case, after decision, to that court. *Danforth* v. *Smith,* 23 Vt 247, 258.

It is put forward by the defendants Haus that the leases ceased to exist on July 31, 1950; that a retransfer of them by the Haus is impossible; that chancery will not entertain a bill seeking the performance of an act which has become impossible; and that

full monetary relief can be had against the trustee in probate court. The claim is not sound. The test of the jurisdiction of a court of equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court. If the plaintiff is then entitled to the aid of equity the jurisdiction will not be defeated by subsequent events which make relief impossible or impractical, as distinguished from improper. 30 CJS Equity, § 74.

Two cases are specifically mentioned. *Clark et al.* v. *Peck's Exrs.*, 79 Vt 275, 65 A 14, is distinguished because there Edward W., who received the property in question from the executors, was rightfully in possession. *Idem*, 290, 292. Here it is claimed that the Haus were not. Insofar as *Mitchell* v. *Blanchard*, 72 Vt 85, 86, 47 A 98, is inconsistent with this opinion, it is not followed.

As previously stated, the Trust Company also demurred on the ground that as to it the bill was without equity. To this end it spends some time in a discussion of the allegations of the bill. Several reasons are advanced in an attempt to demonstrate that the allegations of the bill are insufficient to show a breach of trust by the defendant Trust Company.

Chancery Rule 20 provides: "Every demurrer shall distinctly specify the ground or grounds thereof." The rule was designed to facilitate the correction of shortcomings and irregularities of pleading in the court of chancery at the very beginning of the litigation. Under this rule it no longer suffices, as it did previously, simply to say that the bill is without equity. Why and how the bill is without equity must be distinctly specified. It follows that this part of the Trust Company's demurrer fails in that it does not distinctly specify anything within the purview of the rule.

So far as the record discloses, all of the defects which the Trust Company now claims exist in the plaintiff's bill, if of consequence, might have been and ought to have been corrected by amendment below. The plaintiffs should have been afforded that opportunity. In this situation we will not affirm on any legal ground whether made by the demurrer or not. So to do would vitiate both the spirit and the letter of Rule 20, and open the door to the presentation of all manner of claims for the first time in this court. It is true that in *Bancroft* v. *Vail*, 91 Vt 266, 268, 99 A 1014, Rule 20 was passed over in support of the decree. The point was not discussed; no supporting authority was cited. There but

one issue was involved, here many. It is not desirable to extend *Bancroft* v. *Vail* beyond its exact holding.

However, since the application of Rule 20 is herein announced for the first time, we will not make final entry here, but will remand the case for further proceedings.

■ ■ Under their motion that if the Trust Company's demurrer were sustained the same entry be made for them the defendants Haus advance several grounds of demurrer. These are not for consideration. By failing to demur within the time limited by Chancery Rule 16, and by failing to insist in their answer on special matter in the nature of a demurrer as permitted by Chancery Rule 15, a demurrer was waived. *Wade* v. *Pulsifer*, 54 Vt 45, 71; 30 CJS Equity § 264. And a demurrer once waived is always waived. *Hooker* v. *Hooker*, 88 Vt 335, 348, 92 A 443. These defendants cannot accomplish by indirection that which they cannot do directly.

*Decree allowing demurrer reversed pro forma. The defendant Brattleboro Trust Company has leave to file within 30 days a demurrer conforming to Chancery Rule 20, if so advised.*