## William M. Tancreti et als v. Tony Terino

[108 A2d 520]

May Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed October 5, 1954.

*Fucci & Fucci* and *Raymond L. Miles* for the defendant. *Lewis E. Springer, Jr.* for the plaintiff.

**Sherburne, C. J.** This cause comes here before final judgment upon defendant's exceptions to the overruling of the demurrer incorporated in his answer to plaintiffs' bill of complaint.

The defendant is the owner of a building, located in White River Junction in the town of Hartford, in which are two adjoining stores, one a grocery store and one a drug store and some apartments. On March 6, 1948, the defendant and the plaintiff William M. Tancreti duly executed an indenture therein stated to have been entered into on February 23, 1948, whereby the defendant leased the grocery store to the said William for a term of ten years with a right of renewal for a further term of five years, granted the name of the Maple Street Cash Market, and agreed to furnish fuel for heating the two stores and the

apartments and that he would not by himself or in connection with any other person or persons or corporation enter into any business of a like kind or nature for a period of ten years within a radius of ten miles from White River Junction. And the said William among other things agreed to operate and take care of the heating plant and to furnish heat at all reasonable times to the drug store and apartments and not to enter into any business similar in nature to the business conducted by the defendant in the drug store, except that either party could sell soft drinks. The indenture contained the usual provisions about the payment of the stipulated monthly rent and the right of re-entry. This indenture will be referred to as exhibit A. On February 27, 1948, the defendant gave the said William a bill of sale of the contents of the grocery store as per an inventory dated February 23, 1948, together with the store fixtures, in consideration of the sum of $16,500.00. This bill of sale will be referred to as exhibit "C". On March 10, 1948, the defendant and the said William duly executed an indenture, which the plaintiff Arnold L. Tancreti also signed, wherein it is stated that the said William has purchased the grocery store business formerly owned by the defendant, and is leasing the real estate used in connection therewith, and whereby the defendant and the said William amplify and, in effect, considerably amend the terms contained in exhibit A about what may not be sold in the drug store and about what may not be sold in the grocery store, and the defendant agrees not to engage in the retail grocery business within a radius of ten miles for a period of ten years from date. This indenture will be referred to as exhibit B. On it is an assignment by said Arnold and said William to the plaintiff Maple Street Cash Market, Inc. for one dollar and other valuable considerations, dated March 20, 1952.

On March 11, 1953, the defendant commenced an action of ejectment against the said William and Arnold for the recovery of the leased store, arrears in rent and damages because of the failure of the said William to properly heat the drug store and apartments and because of his having entered into business similar in nature to the business conducted by the defendant in the said drug store. On June 19, 1953, said William and Arnold moved to transfer the cause into equity and filed this

bill of complaint joining Dorothy P. Tancreti and Maple Street Cash Market, Inc. as complainants. Upon hearing on July 15, 1953, the motion was granted and the cause was transferred to the court of chancery and a time was fixed for the defendant to answer the bill of complaint.

So far as here material the bill of complaint alleges that exhibit A was signed by the defendant and said William,"the same being a written lease and agreement which is now in force and is subsisting between the respective parties"; that exhibit B was signed and executed by the defendant of the one part and said Arnold and said William of the other part; and that the defendant did make, execute and deliver exhibit C to the said William. Paragraph 4 of the bill of complaint, after reciting that the consideration for the purchase of store, fixtures and stock of goods together with the several promises made by the defendant in exhibits A., B. and C., were of great value, alleges that following the purchase of the store by the parties plaintiff, the said Arnold and William went into possession and proceeded to conduct the merchandising of groceries therein, and thereupon did organize the Maple Street Cash Market, Inc. the co-plaintiff, and that said corporation did there conduct a grocery store, always observing the obligations and promises of the said Arnold and William to the defendant, all to the great profit of the several plaintiffs, until shortly thereafter they became injured in the conduct of the business by the acts of the defendant in selling in the drug store one line of merchandise after another, infringing upon their grocery business, contrary to the defendant's promises as set forth in exhibits A and B; and in spite of their protests the defendant persisted in so doing, thereby causing a great loss of patronage and profit from the sale of merchandise the plaintiffs would have otherwise sold. Paragraphs 5,6,7 and 8 of the bill of complaint allege that the defendant advertised to sell groceries in competition with the plaintiffs, with the purpose of drawing away their customers; that he urged some of their patrons to stop doing business with the plaintiffs, and to do business with him; that as a consequence the plaintiffs have suffered great loss and damages and unless the court restrains the defendant from so infringing upon their grocery business they will suffer irrepar-

able injury, and the defendant will persist in violating his said agreements. Paragraph 9 alleges that the defendant interfered with the plaintiff's operation of the heating plant whereby the apartments in the store building were unnecessarily deprived of sufficient heat, with the evil intention of injuring the plaintiffs in the good will of the tenants therein. Paragraph 10 alleges that the defendant after February 23, 1948 leased the drug store for a period of time without protecting the plaintiffs by proper reservations, and thereby permitted the tenants thereof to sell groceries, when he had agreed directly and indirectly not to sell or permit such sale in said store; that the defendant engaged counsel to draw up the leasehold agreements, and the plaintiffs, not being independently represented, were misled to believe that the defendant was bound not to sell or lease the drug store without taking proper measures to protect the plaintiffs against unjust infringements in the sale of grocery items in the drug store during the tenure of the plaintiffs; and the plaintiffs were also misled to believe that the defendant had bound his heirs, executors, administrators and assigns against indirect injury and damage resulting from infringements by lessees of the drug store, that as a result of the failure of said contract to state the true agreement the several writings ought to be reframed under the control and direction of the court to protect the plaintiffs as the defendant had promised and as the plaintiffs were led to believe, and unless such reformation is had the plaintiffs may suffer and are likely to suffer irreparable injury and damage. The bill of complaint among other things prays for damages for breach of exhibits A and B by the defendant in selling groceries in the drug store, for an injuction restraining the defendant from further violation of such contracts relative to the sale of grocery items and from interfering with the operation of the heating plant, for a reformation of the contracts, and that the defendant be ordered to give release and quittance for such sums of money as may be found due for unpaid rent.

Under his exceptions to the overruling of his demurrer the defendant has only briefed three grounds. In his answer to the allegation that exhibit B was signed and executed by the defendant of the one part and by said Arnold and William

of the other part the defendant admits that it was made, signed and executed between him and William M. Tancreti and acknowledged by them and no one else. Further answering to the same allegation the defendant says that exhibit B was an agreement between him and William M. Tancreti and no one else; that as a matter of substantive law it did not change or alter the legal effect of exhibit A, and that a breach thereof, if any exists or ever existed, gives rise to no equitable right of action, and that if the parties thereto or any of them have any right of action arising therefrom they have a full, adequate and complete remedy at law, and that a court of equity has no jurisdiction thereof, and instead of filing a formal demurrer in this answer insists on the foregoing special matter that goes to the jurisdiction of this court, viz: that exhibit B is not germane to the bill of complaint and affords the plaintiffs no rights to be protected or enforced in a court of chancery. The foregoing is the first such ground of demurrer.

It will be noted that this ground of demurrer only applies to exhibit B. In his briefing the defendant says nothing about its not being germane. The defendant seems to be in some doubt as to whether it is a ground of demurrer because, after stating the substance of what he said in his answer, he says: "In short, call it a demurrer or what you will, it raises a jurisdictional question. This may be raised at any time."

Under this claim the defendant also sets out in his brief matters about exhibits A and C and some of the allegations in paragraph 4 of the bill of complaint, and in effect claims a misjoinder of parties plaintiff because that William Tancreti was the only plaintiff to be a party to the three exhibits. He further says that the plaintiffs must recover under the allegations of the bill of complaint if at all, and that the allegations thereof are to the effect that the defendant's violations of exhibits A and B resulted in damage to the plaintiffs jointly, whereas they seek to have them off-set the several debt for rent. These matters are not comprehended in the ground of demurrer. We express no opinions as to their merits if properly raised, nor as to the effect of certain allegations in plaintiffs' replication whereby they claim an estoppel in respect to these matters.

The only matter in this ground of demurrer that is briefed is that a breach of exhibit B gives rise to no equitable right of action, and that there is an adequate remedy at law. The breach of an agreement in a contract for the sale of a business that the seller will not compete with the purchaser may be enjoined where the restraint imposed by the contract is reasonable and no greater than is necessary to protect the purchaser. 43 CJS Injuctions §84a p. 565. In a somewhat similar case it was held proper to enjoin a breach of the contract. *Butler* v. *Burleson,* 16 Vt 176. This rule applies when, as here, it is alleged that unless restrained the plaintiff will suffer irreparable injury.

The second ground of demurrer so far as here material reads: "that the rights of Tony Terino and the plaintiff, William M. Tancreti, so far as the relation of lessor and lessee respectively are concerned, are, as a matter of substantive law, governed by and to be judicially determined solely from the contents of 'Exhibit A' and that the contents of 'Exhibits B and C' and any action arising therefrom in behalf of the plaintiffs or any of them, is cognizable solely in a court of law and that this court has no jurisdiction thereof." In his brief the defendant says "the demurrer raises the question as to whether any defense to the ejectment suit can be predicated on the contents of Exhibits B and C; that the last two exhibits do not affect Exhibit A. Any violation of Exhibit A by Terino is solely cognizable in a court of law in behalf of William M. Tancreti."

Exhibit B was executed by the defendant and said William four days after they had executed exhibit A and with the same formality, whereby, as previously noted, the terms of exhibit A are considerably amplified and amended as to what may and may not be sold in the respective stores. Consequently exhibit B does affect exhibit A, and damages from a breach of exhibit B by the defendant can be off-set against unpaid rent. This ground of demurrer does not comprehend the last sentence quoted from defendant's brief nor his claim of a misjoinder of the parties plaintiff.

The last ground of demurrer to be briefed is that the lease, 'Exhibit A', is not ambiguous and that the allegations of said paragraph numbered 9 to the effect that plaintiffs were misled

or to the effect that the contract failed to state the true agreements or that said agreements ought to be reformed or surrendered and cancelled, and new ones executed are incompetent, irrelevant and wholly insufficient to be answered unto, and that as a matter of law said allegations are wholly insufficient to afford the plaintiffs any relief whatever."

■ Chancery Rule 20 reads "Every demurrer shall distinctly specify the ground or grounds thereof." Under this rule it does not suffice to say that the bill is without equity. Why and how the bill is without equity must be distinctly specified. *Manley* v. *Brattleboro Trust Co.*, 116 Vt 460, 465, 78 A2d 488. The demurrer was intended to apply to paragraph 10, and we so treat it, but it amounts to no more than a claim that the allegations in such paragraph are without equity. Why and how the allegations were incompetent, irrelevant and insufficient should have beeen distinctly specified. This ground of demurrer consequently fails.

*The order overruling the demurrer in defendant's answer is affirmed, and the cause is remanded.*