## In re Estate of Howard Mahoney

[ 220 A.2d 475 ]

April Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 7, 1966

*Charlotte Mahoney* pro se.

*Leary and Leddy* for parents.

**Smith, J.** The decedent, Howard Mahoney, died intestate on May 6, 1961, of gunshot wounds. His wife, Charlotte Mahoney, the appellant here, was tried for the murder of Howard Mahoney in the Addison County Court and was convicted by jury of the crime of manslaughter in March, 1962. She is presently serving a sentence of not less than 12 nor more than 15 years at the Women's Reformatory in Rutland.

Howard Mahoney left no issue, and was survived by his wife and his father and mother. His father, Mark Mahoney, was appointed administrator of his estate which at the present time amounts to $3,885.-89. After due notice and hearing, the Probate Court for the District of Franklin entered a judgment order decreeing the residue of the Estate of Howard Mahoney, in equal shares, to the father and mother of the decedent. An appeal from the judgment order and decree has been taken here by the appellant widow. The question submitted is whether a widow convicted of manslaughter in connection with the death of her husband may inherit from his estate.

The general rules of descent provide that if a decedent is married and leaves no issue, his surviving spouse shall be entitled to the whole of decedent's estate if it does not exceed $8,000. 14 V.S.A. §551 (2). Only if the decedent leaves no surviving spouse or issue does the estate descend in equal shares to the surviving father and mother. 14 V.S.A. §551 (3). There is no statutory provision in Vermont regulating the descent and distribution of property from the decedent to the slayer. The question presented is one of first impression in this jurisdiction.

In a number of jurisdictions, statutes have been enacted which in certain instances, at least, prevent a person who has killed another from taking by descent or distribution from the person he has killed. 23 Am. Jur. 2d Descent and Distribution, §98, p. 841. A statute of

this nature, carefully drawn, is considered by many authorities to be the best solution to the problems presented. See "Acquisition of property by wilfully killing another—a statutory solution," 49 Harvard Law Review 715 (1935-1936).

Courts in those states that have no statute preventing a slayer from taking by descent or distribution from the estate of his victim, have followed three separate and different lines of decision.

(1)   The legal title passed to the slayer and may be retained by him in spite of his crime. The reasoning for so deciding is that devolution of the property of a decedent is controlled entirely by the statutes of descent and distribution; further, that denial of the inheritance to the slayer because of his crime would be imposing an additional punishment for his crime not provided by statute, and would violate the constitutional provision against corruption of blood. *Carpenter's Estate,* 170 Pa. 203, 32 Atl. 637; *Wall* v. *Pfanschmidt,* 265 Ill. 180, 106 N.E. 785; *Bird* v. *Plunkett et al,* 139 Conn. 491, 95 A.2d 71.

(2)   The legal title will not pass to the slayer because of the equitable principle that no one should be permitted to profit by his own fraud, or take advantage and profit as a result of his own wrong or crime. *Riggs* v. *Palmer,* 115 N.Y. 506, 22 N.E. 188; *Price* v. *Hitaffer,* 164 Md. 505, 165 Atl. 470; *Slocum* v. *Metropolitan Life Ins. Co.,* 245 Mass. 565, 139 N.E. 816. Decisions so holding have been criticized as judicially engrafting an exception on the statute of descent and distribution and being "unwarranted judicial legislation." *Wall* v. *Pfanschmidt, supra.*

(3)   The legal title passes to the slayer but equity holds him to be a constructive trustee for the heirs or next of kin of the decedent. This disposition of the question presented avoids a judicial engrafting on the statutory laws of descent and distribution, for title passes to the slayer. But because of the unconscionable mode by which the property is acquired by the slayer, equity treats him as a constructive trustee and compels him to convey the property to the heirs or next of kin of the deceased.

The reasoning behind the adoption of this doctrine was well expressed by Mr. Justice Cardozo in his lecture on "The Nature of the Judicial Process." "Consistency was preserved, logic received its tribute, by holding that legal title passed, but it was subject to a con-

structive trust. A constructive trust is nothing but 'the formula through which the conscience of equity finds expression.' Property is acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest. Equity, to express its disapproval of his conduct, converts him into a trustee." See 4 Scott on Trusts (2d ed. 1956) §402; Bogart, Trusts and Trustees (2d ed. 1960), §478. See *Miller* v. *Belville,* 98 Vt. 243, 247, 126 Atl. 590.

■ The New Hampshire court was confronted with the same problem of the rights to the benefits of an estate by one who had slain the decedent, in the absence of a statute on the subject. *Kelly* v. *State,* 105 N.H. 240, 196 A.2d 68. Speaking for an unanimous court, Chief Justice Kenison said : "But, even in the absence of a statute, a court applying common law techniques can reach a sensible solution by charging the spouse, heir or legatee as a constructive trustee where equity and justice demand it." *Kelly* v. *State, supra,* p. 70. We approve of the doctrine so expressed.

■ However, the principle that one should not profit by his own wrong must not be extended to every case where a killer acquires property from his victim as a result of the killing. One who has killed while insane is not chargeable as a constructive trustee, or if the slayer had a vested interest in the property, it is property to which he would have been entitled if no slaying had occurred. The principle to be applied is that the slayer should not be permitted to improve his position by the killing, but should not be compelled to surrender property to which he would have been entitled if there had been no killing. The doctrine of constructive trust is involved to prevent the slayer from profiting from his crime, but not as an added criminal penalty. *Kelly* v. *State, supra,* p. 70; Restatement of Restitution, §187 (2), comment a.

The appellant here was, as we have noted, convicted of manslaughter and not of murder. She calls to our attention that while the Restatement of Restitution approves the application of the constructive trust doctrine where a devisee or legatee murders the testator, such rules are not applicable where the slayer was guilty of manslaughter. Restatement of Restitution, §187, comment e.

The cases generally have not followed this limitation of the rule but hold that the line should not be drawn between murder and man-

slaughter, but between voluntary and involuntary manslaughter. *Kelly* v. *State, supra; Chase* v. *Jennifer,* 150 A.2d 251, 254.

We think that this is the proper rule to follow. Voluntary manslaughter is an intentional and unlawful killing, with a real design and purpose to kill, even if such killing be the result of sudden passion or great provocation. Involuntary manslaughter is caused by an unlawful act, but not accompanied with any intention to take life. *State* v. *McDonnell,* 32 Vt. 491, 545. It is the intent to kill which, when accomplished, leads to the profit of the slayer that brings into play the constructive trust to prevent the unjust enrichment of the slayer by reason of his intentional killing.

In Vermont, an indictment for murder can result in a jury conviction on either voluntary or involuntary manslaughter. *State* v. *Averill,* 85 Vt. 115, 132, 81 Atl. 461. The legislature has provided the sentences that may be passed upon a person convicted of manslaughter, but provides no definition of that offense, nor any statutory distinction between voluntary and involuntary manslaughter. 13 V.S.A. §2304.

The cause now before us is here on a direct appeal from the Probate Court. Findings of fact were made below from which it appears that the judgment of the probate court decreeing the estate of Howard Mahoney to his parents, rather than to his widow, was based upon a finding of the felonious killing of her husband by Mrs. Mahoney. However, the appellees here have asked us to affirm the decree below by imposing a constructive trust on the estate in the hands of the widow.

But the Probate Court did not decree the estate to the widow, and then make her a constructive trustee of such estate for the benefit of the parents. The judgment below decreed the estate directly to the parents, which was in direct contravention of the statutes of descent and distribution. The Probate Court was bound to follow the statutes of descent and distribution and its decree was in error and must be reversed.

The Probate Court was without jurisdiction to impose a constructive trust on the estate in the hands of the appellant, even if it had so attempted to do. Probate courts are courts of special and limited jurisdiction given by statute and do not proceed according to common law. While probate courts possess a portion of equitable

powers independent of statute, such powers do not extend to the establishment of purely equitable rights and claims. *In re Estate of Gemma Prudenzano,* 116 Vt. 55, 68 A.2d 704; *J. B. Manley, Jr.* v. *Brattleboro Trust Co.,* 116 Vt. 460, 464, 78 A.2d 488. The claim of the parents here to the Estate of Howard Mahoney is equitable in its origin, and in the extent of the rights in the estate claimed. The equity powers conferred upon the probate court do not extend to the establishment of purely equitable claims and equitable rights. *Admr. of Leonard* v. *Executor of Leonard,* 67 Vt. 318, 320, 31 Atl. 783.

■ However, the jurisdiction of the court of chancery may be invoked in probate matters in aid of the probate court when the powers of that court are inadequate, and it appears that the probate court cannot reasonably and adequately handle the question. The jurisdiction of the chancery court in so acting on probate matters is special and limited only to aiding the probate court. *In re Will of Gemma Prudenzano, supra; J. B. Manley, Jr.* v. *Brattleboro Trust Co., supra,* p. 461.

■ The Probate Court, in making its decree, used the record of the conviction of the appellant for manslaughter for its determination that the appellant had feloniously killed her husband. If the jurisdiction of the court of chancery is invoked by the appellees here it will be for the determination of that court, upon proof, to determine whether the appellant wilfully killed her late husband, as it will upon all other equitable considerations that may be offered in evidence, upon charging the appellant with a constructive trust. "The fact that he is convicted of murder in a criminal case does not dispense with the necessity of proof of the murder in a proceedings in equity to charge him as a constructive trustee." Restatement of Restitution, §187, comment d.

The jurisdiction over charging the appellant with a constructive trust on the estate of Howard Mahoney lies in the court of chancery, and not in the probate court.

*Decree reversed and cause remanded, with directions that the proceedings herein be stayed for sixty days to give the Administrator of the Estate of Howard Mahoney an opportunity to apply to the Franklin County Court of Chancery for relief. If application is so made, proceedings herein shall be stayed pending the final determination thereof. If application is not so made, the Probate Court for the Dis-*

*trict of Franklin shall assign to Charlotte Mahoney, surviving wife, the right and interest in and to the estate of her deceased husband which the Vermont Statutes confer.*

**Shangraw, J.** Concurring. I concur in the result. It must be acknowledged that it would be inequitable, and unjust, for a person who has intentionally killed another to inherit from the person whose life he has so taken.

I am concerned with the impractical aspects of the constructive trust doctrine applied in this case. In its application the burden and expense of again litigating the criminal issue must be borne by the parties interested. Here, the expense of carrying the burden of proof on this issue by the parents might well be prohibitive.

The amount involved is relatively small. To continue this litigation, even though the parents should ultimately prevail, may well be, at least money-wise, like digging a hole to get the dirt to fill another hole.

Suitable legislation providing for an exception to the usual operation of the statutes of descent and distribution might well eliminate extended and expensive litigation, should similar or like circumstances again be present.