## In re Estate of Ruth E. A. Bettis

[340 A.2d 57]

No. 39-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed April 1, 1975

Motion for Reargument Denied May 8, 1975

*Sullivan & McCaffrey*, Rutland, for Petitioners.

*Donald E. O'Brien, Esq.*, Burlington.

**Keyser, J.** This case is an appeal from Washington County (Superior) Court by the husband of Ruth E. A. Bettis, deceased. Four of the six children of the deceased petitioned the

probate court for the District of Washington in March, 1972, to reopen their mother's estate. The petition asked that the sale of the real estate be set aside, alleging that the statutes had not been correctly followed by the probate court and that an inadequate value had been received for the Bettis real property. The probate court without hearing or findings dismissed the petition on motion of the husband whereupon the children, appellees here, appealed said cause to county court. After hearing and findings of fact, the county court ordered the final account of the administrator, the license to sell real estate and the transfer of the real estate to the husband set aside. The husband has appealed that decision to this Court.

The following facts appear from the record. Ruth Bettis died intestate on December 19, 1968, leaving her husband and six children by a previous marriage. Marilyn, the youngest, reached her majority after commencement of probate proceedings. Three of the children and the widower were residents of Vermont during the proceedings. The assets of the Bettis estate consisted of $244.00 personal property, and a house and 118 acres of land in the Town of Roxbury, the Bettis's residence at the time of decease. The commissioners reported debts of the estate amounting to $400.00. Administration charges were estimated to be $100.00. On May 28, 1971, the administrator of the estate filed a petition to sell all of the real estate in order to pay debts which exceeded the value of the personal estate. After statutorily mandated publication in the Northfield newspaper for three consecutive weeks, the petition was heard by the probate court, and the license then issued. There was, however, no personal notice given to the heirs or to anyone else. The probate court gave no indication as to why it granted the license to sell the entire Bettis real property to satisfy the debts of the estate.

In September, 1971, pursuant to the license, the administrator sold the Bettis property to Rudolph Bettis for the sum of $9,210.00 and filed a report of sale with the probate court. Thereafter, a hearing was held on October 7, 1971, on the administrator's final account. Attorneys for both the widower and the children were present, but no objection was made to the allowance of the final account. Decree of distribution issued that same day allowing $3,286.98 to the administrator to cover debts and expenses, leaving a cash balance of $6,500.00 to pay

the homestead allowance and the $250.00 shares to each child. One heir, Richard Aiguier, received his $250.00 check, but the remaining five children's checks and a check for attorney's fees have been retained uncashed by Edwin Free, their attorney. No appeal was taken from the decree of distribution within the thirty-day period allowed by law.

By their briefing and oral argument, both parties advance as the controlling issue whether the license to sell the Bettis real estate was a license to sell to pay debts, 14 V.S.A. § 1251, or whether the Bettis license was, more properly classified, a license to sell beneficial, 14 V.S.A. § 1653. Fitting the Bettis license to sell into either category becomes unimportant, however, since under either statute the proceedings of the probate court were not proper.

The administrator had applied to the probate court for a license to sell to pay debts, alleging debts in excess of personalty value. His prayer asked for permission, subsequently granted, to sell *all* the Bettis real estate—a house and 118 acres of land—to satisfy the estate debt balance of $256.00.

Throughout the proceedings in probate court and county court the appellant claimed a compromise agreement had been made between him and the children whereby the real estate was to be sold to him for $9,350.00. The price was to be sufficient to cover his statutory homestead allowance of $5,000.00, pay the debts of the estate and also pay the sum of $250.00 to each of the six children. Manifestly, this would manipulate the value of the property so as to accomplish a result in accordance with the alleged agreement.

The record is perfectly plain that the probate court relied upon and was influenced by the appellant's representation and insistence to the court that such an agreement had been entered into by the parties. This could only have caused the court to take the action it did relative to the license to sell and decree of distribution.

Appellant's asserted claim was denied by the county court. Its specific findings, unchallenged here, establish that the children (appellees) "never authorized their attorney, . . . , to enter into any agreements concerning the sale of the property and distribution of assets, or any other matter concerning the estate." The court further found that their attorney "did not make any agreements or compromise settlement on behalf of

the Petitioners in connection with the estate." It can only be concluded from the findings that the course of action taken to obtain a settlement of the estate was deliberate and not otherwise.

■ The power of the probate court to sell real estate is limited and special in nature. This is necessarily so because legal title to the land vested immediately at death in the heirs of Ruth Bettis, subject only to an administrator's lien to pay the debts, expenses of administration, and other expenses legally chargeable against the estate. *In re Callahan's Estate,* 115 Vt. 128, 52 A.2d 880 (1947). 14 V.S.A. § 1251 requires that the personal estate of the deceased be first chargeable with payment of debts and expenses; only where personalty is not sufficient can real estate be sold. And, only so much real estate may then be sold as might be required to pay debts and expenses of administration not discharged by the deceased's personal estate. *Dartmouth Savings Bank* v. *Estate of Schoen,* 129 Vt. 315, 276 A.2d 637 (1971).

■ Considering the estate debt of $256.00 not covered by the value of the personal property, as shown by the application for a license to sell, there was clearly no foreseeable need to sell the whole of the Bettis land at the time the license to sell was granted. The probate court should have been alerted at that time of this fact. If, for reasons not apparent in the record, there was cause to sell the whole Roxbury property, the administrator's petition for a license to sell should properly have so stated. The probate court erred in granting a license to sell the entire piece of property.

The record also shows that the license cannot survive as a license to sell beneficial pursuant to 14 V.S.A. § 1653. The reason for this is that no personal notice was sent to the Bettis heirs, and the required consent in writing to sell was not obtained from the heirs resident in this state.

■ If it appears, as here, on the face of the proceedings that the probate court has acted in a manner prohibited or not authorized by law, its orders and decrees are absolutely void and may be treated as a nullity. Nothing is presumed in favor of its jurisdiction, and such jurisdiction must be made affirmatively to appear. *In re Will of Prudenzano,* 116 Vt. 55, 60, 68 A.2d 704 (1949). The rule of *Lyons* v. *Field,* 106 Vt. 474, 175

A. 11 (1934) produces no contrary result. *Lyons* held that a decree of distribution, unappealed from, binds all parties and becomes the law of the case, whether right or wrong as to all questions passed on by the probate court when making the decree. *Id.* at 479. Since the Bettis decree of distribution is void, *In re Will of Prudenzano, supra*, the *Lyons* finality rule has no controlling effect here. The Washington County Court properly set aside the probate decree, the final account, the license to sell, and the transfer of real property to Rudolph Bettis. The findings of fact of the trial court have a solid base in the evidence and they correctly support the order of the court. On remand to the probate court, appropriate proceedings to properly dispose of the Bettis estate are to be followed consistent with the views expressed herein.

*The order of the Washington County Court is affirmed and is to be certified by said court to the Probate Court for the District of Washington.*