2007 VT 8

**Howard Fletcher v. Henry W. Ferry**

[917 A.2d 937]

No. 05-295

Present: **Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed February 2, 2007

*Edward M. Kenney* of *Roesler, Whittlesey, Meekins & Amidon*, Burlington, for Plaintiff-Appellee.

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** The case before us arose out of a dispute over a right-of-way that defendant Ferry claims over plaintiff Fletcher's property. Both parties are unhappy with the trial court's decision. Defendant appeals the location of the right-of-way, as found by the court, and plaintiff cross-appeals, contending the right-of-way was extinguished by merger. We agree with plaintiff that the trial court erred in failing to find that common ownership in the chain of title eliminated the right-of-way, despite the common owner's acquisition of one of the parcels by intestate succession, and his failure to probate the estates of his parents. We therefore reverse. In view of our holding, it is unnecessary to reach the issues raised by defendant's appeal.*

---

* Defendant argued on appeal that the trial court's placement of the easement partly through a wetland buffer zone is inconvenient, unreasonable, and inaccessible. Defendant failed, however, to address plaintiff's extinguishment-by-merger argument, as he erroneously believed that plaintiff had not timely filed his cross-appeal.

¶ 2. The dispute between the present owners began in June 2000, when defendant wrote a letter to plaintiff advising that he planned to use a right-of-way conveyed for the benefit of his land, known as the Scribner woodlot, across plaintiff's land, the Fletcher parcel. Plaintiff refused to recognize the existence of a right-of-way, as it was not indicated in the deed to his property. While the right-of-way described in defendant's deed was by that point no longer a visible path, in 2001, defendant drove a small tractor across the Fletcher parcel along the course that he believed was the route of the original easement.

¶ 3. As a result, the dispute ripened into a lawsuit in July 2001 when plaintiff filed a complaint in the Washington Superior Court, disputing defendant's right to cross his land, and seeking declaratory and injunctive relief and damages for trespass as well as punitive damages. In count seven of his complaint, plaintiff alleged that any easement across his property was extinguished in January 1972, when the two parcels came into the common ownership of Franklin Scribner, one of their predecessors in title. The trial court rejected plaintiff's merger-doctrine theory and concluded that defendant held an easement across the Fletcher parcel for access to the Scribner woodlot. In its conclusions of law, the court held that plaintiff failed to show that Franklin intended to merge the parcels in 1972, and that intent was necessary for the merger doctrine to take effect. Furthermore, the court determined that the right-of-way was not extinguished because the estates were not probated and therefore, given the possibility that there may have been creditors of the estates, Franklin could not be said to have acquired the full legal title necessary for merger to take place by operation of law.

¶ 4. Plaintiff claims on appeal that the title history shows unity of ownership and possession in Franklin in 1972, thereby extinguishing the easement as a matter of law; that the trial court erred in holding that intent to merge parcels in common ownership is a prerequisite to merger; and that plaintiff's failure to prove that there were no creditors who may have had claims against the unprobated estates did not deprive Franklin of the quality of title necessary for the merger doctrine to operate.

¶ 5. Under the common-law merger doctrine, an easement ceases to exist when the dominant and servient estates come into common ownership. *Capital Candy Co. v. Savard*, 135 Vt. 14, 15, 369 A.2d 1363, 1365 (1976); 4 R. Powell, Powell on Real Property § 34.22[1], at 34-203 (M. Wolf ed. 2005). "When the burdens and benefits [of an easement] are united in a single person ... the servitude ceases to serve any

function. Because no one else has an interest in enforcing the servitude, the servitude terminates." Restatement (Third) of Property (Servitudes) § 7.5 cmt. a (2000). Merger occurs by operation of law.

¶ 6. A review of the title history, as found by the trial court, shows that Franklin acquired his interest in the Scribner woodlot, the dominant estate, in May 1966 when his mother, Ellen Scribner, died. She was the sole owner of the Scribner woodlot, and her only living heirs were her husband, Charles, and son, Franklin. Ellen's estate was not immediately probated, and Charles and Franklin succeeded to the property as tenants in common by the laws of intestate succession. Upon Charles's death in 1972, Franklin became sole owner of the Scribner woodlot in fee simple by the laws of descent and distribution. Formal title to the Scribner woodlot, however, remained in Ellen's name until Franklin finally probated her estate in 1974. Franklin became the sole owner in fee simple of the Fletcher parcel, the servient estate, when his father died in January 1972. Father and son had held the Fletcher parcel as joint tenants with rights of survivorship. Thus, in 1972, Franklin came into sole ownership of both the dominant and servient estates. The property remained in the common ownership and possession of Franklin until May 1973 when he added his son and wife to the Fletcher parcel's title as joint tenants.

¶ 7. In denying that merger occurred in 1972, two issues were significant to the trial court. The first was that plaintiff failed to show that Franklin intended that the parcels be merged in 1972. We have not previously held that intent to merge is required, however, and we decline to do so now. The trial court relied on dicta from an Illinois intermediate appellate court that stated that "[t]he merger of estates is a question of intent." *Ellis v. McClung*, 683 N.E.2d 911, 918 (Ill. App. Ct. 1997). The Illinois court, however, appears to have confused merger in the context of termination of an easement with termination of a mortgage interest. The Illinois court erroneously relied on *Chicago Title & Trust Co. v. Wolchinovesky*, which dealt with merger related to mortgages, for its conclusion that intent is necessary for merger to extinguish an easement. 61 N.E.2d 264, 266 (Ill. App. Ct. 1945). In the mortgage context, intent is a factor in determining whether merger of estates has occurred because operation of the doctrine may unjustly harm a first mortgagee and unfairly elevate a junior one to senior status. *Salazar v. Terry*, 911 P.2d 1086, 1092 (Colo. 1996); 12 Thompson on Real Property § 101.03(e), at 383 (Thomas ed. 1994) (if merger is

applied where a first mortgagee has accepted "a deed in lieu of foreclosure while a junior mortgage is outstanding . . . the first mortgagee would be deemed an owner subject to one mortgage which was formerly a second mortgage," potentially unjustly enriching the junior mortgagee). "[U]nity of ownership should not always destroy the existence of a mortgage when other interests are dependent on it." *Salazar*, 911 P.2d at 1092. None of these considerations apply in the easement context where the right-of-way is extinguished because, as explained in the Restatement, *supra*, ¶ 5, there is no longer a need for it. No other person's interest was affected or foreclosed by merger in this context, so there was no need on the part of plaintiff to prove that Franklin intended to merge the Fletcher parcel with the Scribner woodlot.

¶ 8. The second issue of concern to the trial court was the quality of Franklin's title. The trial court made much of the fact that Franklin did nothing to put title to the Scribner woodlot in his name, and that "prior to the Decrees of Distribution in the Estates of Ellen Scribner and Charles Scribner, the Scribner woodlot was subject to claims of creditors." We cannot agree with the trial court that either of these concerns had any bearing on whether the merger doctrine should extinguish the right-of-way in this case. Franklin was the owner of the Scribner woodlot because the property passed to him by the laws of descent and distribution upon Ellen's and Charles's deaths. An heir's rights and title to property "do not originate in the decree of distribution but are derived from the decedent . . . under the statute of distribution." *In re Callahan's Estate*, 115 Vt. 128, 135, 52 A.2d 880, 884 (1947). Legal title to real property vests in heirs immediately at death, subject only to liens and legally enforceable debts. *Lysak v. Grull*, 174 Vt. 523, 525, 812 A.2d 840, 843 (2002) (mem.); *In re Estate of Bettis*, 133 Vt. 310, 313, 340 A.2d 57, 59 (1975).

¶ 9. Although we have held "a distributee has no right of action to compel delivery to him of title or possession of such property until it has been determined that, after the payment of debts due from the estate and all other legal charges against it, there remains property for distribution," this principle is not violated by recognition of the merger of estates here. First, no creditors were in evidence, and the trial court erred in requiring plaintiff to prove their nonexistence. Although the estates were not probated for several years after Ellen's and Charles's deaths, no creditor acted to open an estate for either Ellen or Charles because their descendants eventually probated the estates. See 14 V.S.A. § 903(2) (stating that if a person dies intestate, administration of

the estate "may be granted to one or more of the principal creditors"). We can infer from these facts that no substantial creditors existed. Second, the operation of the merger doctrine and the consequent elimination of an easement connecting the two parcels could not affect any general creditor's interest in any event. Whether or not the parcels were merged, general creditors have only a monetary interest in the property comprising a debtor's estate, both real and personal, and not the sort of real property interest like a mortgage that could be diminished by the elimination of a right-of-way.

■ ¶ 10. In short, as of January 1972, Franklin was the only person who had a property right to the Fletcher parcel and Scribner woodlot. Although formal title to the Scribner woodlot was not decreed in him until after his death, no other person could or did lay claim to the parcel. Thus, the utility of the right-of-way disappeared because Franklin was the only individual with an interest in accessing the Scribner woodlot through the Fletcher parcel, and he could lawfully do so without the easement, as he owned the Fletcher parcel in fee simple.

■ ¶ 11. Once a right-of-way has been extinguished by merger, it "[can]not be re-created by the mere subsequent separation of the parcels." *Capital Candy*, 135 Vt. at 16, 369 A.2d at 1365. Although defendant's deed to the Scribner woodlot purported to convey the right-of-way to him over the Fletcher parcel, the easement was extinguished by merger and no longer existed in plaintiff's chain of title. As the Scribner woodlot was not landlocked, the easement was not revived by necessity, and no one in plaintiff's chain of title recreated the easement by reservation or grant. See *id.* (where right-of-way is extinguished, it can only be recreated by "proper new grant or reservation"). Therefore, defendant has no legally cognizable interest in crossing the Fletcher parcel.

*Reversed.*